(135 P.3d 1258)
No. 94,816

CHARLES MCMILLAN, *Appellant*, v. DAVID R. MCKUNE, WARDEN
LCF, AND KANSAS PAROLE BOARD, *Appellees*.

Opinion filed March 31, 2006.

*Charles McMillan,* appellant pro se.

*Ralph J. De Zago,* assistant attorney general, for appellees.

Before ELLIOTT, P.J., GREEN and GREENE, JJ.

GREENE, J.: Charles McMillan appeals the district court's dismissal of his K.S.A. 60-1501 petition on the ground that the court lacked jurisdiction due to the untimely filing of the petition. McMillan argues that he was not provided notice of his appeal rights and that his time to file the petition should be tolled during his efforts to exhaust administrative remedies. Concluding that estoppel and the doctrine of unique circumstances renders McMillan's filing timely, we reverse the dismissal and remand for further proceedings.

*Factual and Procedural Overview*

McMillan is an inmate at Lansing Correctional Facility who received a letter dated July 15, 2004, stating that he would be classified and managed as a sex offender and failing to provide any notice of rights for review or appeal. The record fails to reflect when this letter was received, but McMillan filed a "Form 9" request for review of the decision on July 27, 2004, stating, "I would like to know who is responsible for this request [to be classified a sex offender]." By response dated July 29, 2004, McMillan was advised in virtually illegible handwriting by an unknown agency employee that "[t]he KPB made the original request to have you managed as a sex offender . . . . Talk to your [counselor?] if you want to request an override." Again the record fails to reflect when this response was received by McMillan, and again, the response failed to provide any notice of rights for review or appeal.

On August 3, 2004, McMillan submitted a handwritten request "to this committee and to any panel related thereof" challenging the classification on the basis that

"1) I am not a convicted sex offender by any state or federal statute and or court.

"2) I have no juvenile adjudication as a sex offender from any court.

"3) I have never been convicted of a crime that was sexually motivated.

. . . .

"4) Having never been convicted of a sex offense, I proclaim that I have never engaged in any type of sexually motivated behavior prohibited by the K.D.O.C. rules while in custody.

"5) Included with this request is a journal entry from the Reno County Courthouse . . .which stipulates no [sexually motivated] convictions therein and the reasons therefore [sic]. [Indeed, the journal entry finds insufficient evidence to bind McMillan over on attempted rape and attempted aggravated criminal sodomy.]"

By letter dated September 9 and received by McMillan September 15, 2004, the request for relief was denied. On September 17, McMillan filed a formal grievance under K.A.R. 44-15-102 stating:

"I'm filing this grievance as to being classified as a sex-offender by the K.P.B. and the Sex Offender Override Panel. What criteria did the K. P.B. use in determining why I am now to be managed as a sex offender? Who was the person(s) who initiated the request that I be managed as a sex offender? Finally, what written request or documentation, did the sex offender override committee use in determining me as a sex offender."

The Unit Team response dated variously 10-11-04, 10-13-04, and 10-15-04 stated that

"[t]he Kansas Parole Board passed you until April, 2007, with the recommendation for SOTP treatment. We had to request you be managed as a sex offender to offer you SOTP treatment. Please write the Parole Board regarding why they recommended SOTP treatment."

McMillan indicated on the grievance response form that he was not satisfied with Unit Team response and selected the option to forward to the Warden's Office for review on October 14, 2004.

By letter attached to the original grievance form and dated October 18, 2004, the Warden responded stating that "no action can be taken" because the grievance procedure is not to be "used in any way as a substitute for, or as part of, the classification decision

making process." The letter response also indicated that McMillan should comply with IMPP 11-115(C)(4)(a) (which refers to IMPP 11-106[V]) to process "any further appeal." In contrast to the attached letter, the form response itself stated: "If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections [within] three (3) calendar days of receipt."

On November 22, 2004, McMillan completed another Form 9 request for review addressed to the Warden asking "for a sexual override as to being classified as a sex offender." In support he stated that "there was a judicial determination that there was no probable cause to establish that my crime(s) were sexually motivated." In a "Disposition" signed by an "executive officer" and dated December 2, 2004, McMillan's request was apparently denied on its merits with this statement:

"First of all, LCF has supported your override, however the decision to manage you as a sex offender has been made by the MDT. Unless you have new evidence to present there is no further appeal to this decision."

In the apparent belief that the December 2 determination was final, McMillan filed his petition under K.S.A. 60-1501 on December 22, 2004.

The district court dismissed McMillan's petition for lack of jurisdiction, concluding that pursuant to administrative regulations, McMillan had 72 hours from the initial notification (September 9) that his override was denied to file his Form-9 appeal of the override denial, and his efforts thereafter failed to toll his 30-day deadline to file the 60-1501 petition. The court relied on IMPP 11-106, which states:

"Within 72 hours after receiving a classification decision, the inmate may appeal the decision to the warden. The inmate's request shall be submitted through the unit team as a form 9 request for review."

McMillan appeals.

### Standard of Review

Our standard of review is whether the factual findings by the district court are supported by substantial competent evidence and

whether those findings are sufficient to support its conclusion of law. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004).

*Was McMillan Entitled to Notice of His Appeal Rights?*

In his well-presented pro se brief on appeal, McMillan initially argues that he was never given notice of his right to appeal the September 9, 2004, decision of the Sex Offender Review Panel that denied his request for an override of the sex offender classification. The respondents argue that "this is a moot point" because McMillan did not timely file the appropriate appeal even after he was advised of the appropriate procedure in October 2004. We disagree that McMillan's point is "moot"; in fact, we conclude that had the September 9 letter contained a brief statement as to McMillan's rights for review or appeal (such as: "You have 72 hours to appeal this decision to the warden through the unit team as a form 9 request for review pursuant to IMPP 11-106[V][A]."), a host of administrative effort as well as judicial time might have been saved. Moreover, at no time during the rather protracted administrative proceedings thereafter was McMillan advised that all was for naught because his appeal rights terminated September 18, 2004.

McMillan correctly notes that this court has referenced the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA) in construing and applying Department of Corrections regulations. Indeed, in *Holt v. Saiya*, 28 Kan. App. 2d 356, 360, 17 P.3d 368 (2000), the court cited and relied on a case interpreting K.S.A. 77-613(b) in determining whether a request for reconsideration should toll the deadline for filing a 60-1501 petition. Similarly, McMillan requests that we reference and apply a key provision within the Administrative Procedure Act, K.S.A. 77-526(c). This statutory subsection reflects a mandatory notice of review and appeal rights within any initial or final administrative order:

"The order shall also include a statement of the available procedures and time limits for seeking reconsideration, administrative review or other administrative relief. . . . Any final order, for which a petition for reconsideration is not a prerequisite for seeking judicial review, and any initial order, for which further administrative review is not available, shall state the agency officer to receive service of a petition for judicial review on behalf of the agency."

We find no similar requirement in Department of Corrections regulations or applicable statutes. Moreover, McMillan does not mount an effective constitutional attack on the sufficiency of the notices of administrative action received during the course of his administrative proceedings. In any event, we need not address the question at this time given our resolution of McMillan's second issue on appeal. Instead, we simply note that this court routinely sees instances of inmate confusion regarding the appropriate procedure or forms to institute a review or appeal or grievance of various disciplinary, classification, grievance, or other agency actions. We believe that the policy reflected in K.S.A. 77-526(c) is to assure notification to an aggrieved litigant of the precise steps for meaningful appellate review. This policy is most assuredly of equal importance in the context of inmate administrative proceedings but is thwarted in the absence of similar advice to an inmate on each and every action notification. We fail to understand why such action notifications do not consistently contain a brief but clear statement of instructions to inmates as to the procedure, forms, and timing to seek review.

*Did McMillan's Efforts to Exhaust Administrative Remedies Toll His Deadline to Appeal?*

McMillan next challenges the district court's dismissal for lack of jurisdiction when his 60-1501 petition was filed within 30 days of the final agency action. He claims that he made extensive efforts after July 15 to exhaust administrative remedies and that he did not receive a final action notification until December 2, 2004, within the required 30 days of filing his 60-1501 petition on December 22, 2004. For the reasons explained below, we conclude that McMillan's petition should be deemed timely, thus requiring that we reverse the district court's dismissal and remand for a hearing on McMillan's petition.

The district court dismissed McMillan's petition on the ground that the September 9 letter was not appealed within 72 hours pursuant to IMPP 11-106(V)(A). The respondents on appeal concede that McMillan attempted to exhaust administrative remedies, but did so through incorrect, untimely, and ineffective procedures. As

we see it, however, the problem is that respondents did not adhere to their own regulations and misled the inmate throughout the process. McMillan articulates his position as follows:

"The warden [accepted] petitioner's late appeal [Nov. 22 Form 9] and made a ruling [Dec. 2] with the knowledge that petitioner was filing a late appeal. As petitioner explained in the appeal, petitioner was not given notice by the Sex Offender Review Panel that an appeal was available. Petitioner did exhaust his administrative remedies. Petitioner's exhaustion requirement should not be subjected to a hyper-technical reading and enforcement by the courts of the Secretary's Internal Management Policies and Procedures when the administrative agency governed by the policy determined to hear the appeal."

We agree. We deem the warden's acceptance of McMillan's untimely Form 9 request for review and the subsequent December 2, 2004, ruling on its merits as a waiver of the agency's own rules requiring such requests to be filed within 72 hours of the initial classification determination. Rules and regulations adopted by an administrative board to carry out the policy declared by the legislature in the statutes have the force and effect of laws; such regulations are issued for the benefit of both the agency, and the public and an agency must be held to the terms of its regulations. *Tew v. Topeka Police & Fire Civ. Serv. Comm'n*, 237 Kan. 96, 100, 697 P.2d 1279 (1985). An agency may not violate its own rules, and where it fails to follow the rules that it has promulgated, its orders are unlawful. *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. 398, Syl. ¶ 1, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973). Here, the warden's final action on McMillan's request for review need not be considered unlawful, but it renders ineffective the agency's argument on appeal that McMillan's petition was untimely. When an agency determines to disregard its own procedural rules, it is estopped on appeal from arguing that failure of a litigant to observe those same procedural rules deprives the appellate court of jurisdiction.

In addition to our conclusions of waiver and estoppel, we note that this appeal presents circumstances for application of the doctrine of unique circumstances to save the otherwise untimely appeal. This doctrine has been embraced by our Supreme Court since at least 1988 and has been articulated as follows:

" 'When employed in the context of an untimely appeal, the unique circumstances concept is based on a theory similar to estoppel. The [United States] Supreme Court seems to have concluded that a party ought not be denied an opportunity to appeal because of his failure to file a timely appeal when that failure resulted from reliance on action taken by the district court that generated a reasonable belief that an appeal could be initiated at a later date.' " *In re Tax Appeal of Sumner County*, 261 Kan. 307, 313, 930 P.2d 1385 (1997).

Our Supreme Court has specifically held that where an administrative agency misleads a litigant as to the deadline to seek reconsideration, which is a prerequisite to further appeal, the litigant should not be deprived of his or her rights if he or she acts within the erroneously stated period. *Sumner County*, 261 Kan. at 317. Here, McMillan was variously told in action notifications that his next step was: (i) talk to your counselor; (ii) write to the Parole Board about your SOTP; (iii) forward your Unit Team response to the warden; (iv) comply with IMPP 11-115(c)(4)(a) (even though the time for such action had long ago expired); and (v) appeal the grievance disposition to the Secretary of Corrections. He was never told that his appeal rights terminated September 18, 2004, long prior to most of this inconsistent advice. If this was not already confusing if not misleading, at no time was McMillan advised on a timely basis what were the proper steps to institute review or appeal of his classification decision. We conclude that this is a proper case to invoke the doctrine of unique circumstances and consider McMillan's 60-1501 petition timely. Accordingly, the district court's dismissal of the petition is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.