(263 P.3d 852)
No. 103,450

JAMES CHELF, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed September 23, 2011.

*William J. Pauzauskie,* of Topeka, for appellant.

*Matthew J. Donnelly,* legal counsel, of Lansing Correctional Facility, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and KNUDSON, S.J.

STANDRIDGE, J.: James Chelf appeals from the district court's decision to summarily dismiss his personal injury claim for lack of subject matter jurisdiction because he failed to timely exhaust his administrative remedies before filing this lawsuit. For the reasons stated below, we find the district court erred in summarily dismissing Chelf's claim for lack of subject matter jurisdiction because, although it is a mandatory prerequisite to filing a civil suit that must be strictly enforced by the court, the exhaustion requirement set forth in K.S.A. 75-52,138 is not jurisdictional. Nevertheless, we affirm the district court's decision to summarily dismiss Chelf's claim because the undisputed facts in the record do not support either the equitable defenses he advanced or the constitutional violations he alleged in district court.

## FACTS

Chelf, an inmate at the Lansing Correctional Facility, was seriously injured while working in a chemical plant. Another inmate

"was moving [a] big paint mixer machine" with a forklift when that machine slid off and fell on top of Chelf. Chelf suffered a crushed right knee and tibia, and his left arm, bicep, shoulder, thigh, ear, and face were "smashed." His lower back "hurts all the time" from the accident. Chelf estimated his medical expenses, loss of earning capacity, economic loss, and pain and suffering at $2 million.

Chelf's injury occurred on June 18, 2007. Chelf filed a claim for damages with the Kansas Department of Corrections (DOC) on February 14, 2008. Upon review of Chelf's claim, Lansing Property Claims Officer James K. Jones sent Chelf the following response:

"Your Property Claim (Personal Injury) is being returned to you with no action taken. It has been determined that your claim exceeds $500.00. Therefore, in accordance with IMPP [Internal Management Policies and Procedures] 01-117 & 01-118 Property damage/loss or personal injury exceeding $500.00 that cannot be resolved [for] $500.00 or less shall be filed with the Joint Committee on Special Claims against the State."

On February 26, 2008, Chelf filed his claim with the joint committee on special claims (joint committee) as directed by Officer Jones. On August 27, 2008, the joint committee denied Chelf's claim without prejudice. Chelf thereafter filed a petition for damages sounding in tort against the State of Kansas in Shawnee County District Court. Shawnee County transferred the case to Leavenworth County on November 7, 2008.

About a month after the case was transferred, the State filed a motion to dismiss based on Chelf's failure to timely exhaust his administrative remedies. The district court denied the motion, finding insufficient evidence in the record to determine whether Chelf timely exhausted his administrative remedies. The State filed a motion to reconsider, to which it attached an exhibit establishing the date Chelf filed his administrative claim. Upon reconsideration, the district court granted the State's motion to dismiss on grounds that Chelf had "filed [his claim] out of time" and therefore failed to timely exhaust his administrative remedies.

## ANALYSIS

*The Kansas Tort Claims Act*

In October 2008, Chelf filed this lawsuit seeking money damages from the State of Kansas for personal injuries sustained as a result of the State's negligence. At common law, a state—as the sovereign—is immune from suit unless it consents. *Woodruff v. City of Ottawa*, 263 Kan. 557, 561, 951 P.2d 953 (1997). The Kansas Tort Claims Act (KTCA) provides this consent, subject to certain exceptions. The general rule of liability for negligent or wrongful acts or omissions by state employees who are acting within the scope of their employment is set forth in K.S.A. 2010 Supp. 75-6103. Although various exceptions to the general rule of liability are set forth in K.S.A. 2010 Supp. 75-6104, the KTCA makes liability the rule and immunity the exception, and the burden is on the State to establish it is entitled to any of the stated exceptions. *C.J.W. v. State*, 253 Kan. 1, 13, 853 P.2d 4 (1993).

The Kansas Code of Civil Procedure is applicable to actions within the scope of the KTCA. K.S.A. 2010 Supp. 75-6103(b). Under the Kansas Code of Civil Procedure, "[a]n action for injury to the rights of another, not arising on contract," shall be brought within 2 years. K.S.A. 60-513(a)(4). For purposes of filing a timely KTCA claim, Chelf had to file his civil lawsuit for negligence against the State of Kansas within 2 years of June 18, 2007, the date of the accident. Chelf filed his petition with the district court in October 2008; thus, the lawsuit was filed in a timely manner for purposes of the KTCA.

*Inmate Exhaustion Requirements*

Because Chelf was an inmate at the time of the accident, however, we must consider the viability of Chelf's claim of negligence not only in the context of the KTCA, but also in the context of a separate and distinct statutory scheme relating to the DOC. To that end, K.S.A. 75-52,138 requires any inmate in the custody of the Secretary of Corrections to exhaust all administrative remedies provided by the Secretary of Corrections before filing a civil lawsuit against the State of Kansas. At issue here is K.A.R. 44-16-104a, the administrative regulation promulgated by the Secretary of Correc-

tions governing inmate claims for personal injury. In order to provide the necessary context for our analysis of the issue presented in this first claim of error, we find it helpful to briefly review the history of this regulation.

The prior regulation, K.A.R. 44-16-104, became effective on May 1, 1980, and was revoked in its entirety on February 15, 2002. Before it was revoked, the regulation stated as follows:

"(a) Claims for property loss or damage or personal injury may be submitted to the institution and secretary of corrections. If the loss is greater than $500.00, the claim may be filed with the joint legislative committee on claims against the state." K.A.R. 44-16-104 (2000).

A panel of this court was required to interpret this provision of K.A.R. 44-16-104 in *Bates v. Kansas Dept. of Corrections*, 31 Kan. App. 2d 513, 514-15, 67 P.3d 168 (2003). In *Bates*, an inmate sued the State for more than $75,000 based on serious personal injuries (crushed pelvis, crushed back, and a severed urethra) received while operating a road grader at a correctional institution. Because he did not file a grievance or claim form with the prison prior to filing suit, the district court dismissed the lawsuit based on Bates' failure to exhaust his administrative remedies. Bates then filed a claim with the legislature's joint committee on special claims against the State (joint committee). After the joint committee denied him relief, Bates refiled his claim in district court. The State moved for summary judgment, which the court granted. In support of this decision, the court again found Bates had failed to exhaust administrative remedies under K.A.R. 44-16-104, which required him to file a grievance or claim with the institution *prior* to seeking relief from the joint committee.

On appeal, a panel of this court reversed. In its analysis, the *Bates* court interpreted K.A.R. 44-16-104 as providing an inmate in Bates' situation with two alternatives for exhausting administrative remedies: (1) presenting the claim to the prison; or (2) presenting the claim to the joint committee. In so doing, the court specifically rejected the argument that K.A.R. 44-16-104 required a two-step (as opposed to an alternative) exhaustion process. Relevant to this analysis, the court explained the rationale for making

either of these two alternatives available to satisfy an inmate's exhaustion requirement:

"The reason behind the joint committee option may be found in K.S.A. 46-920, which governs personal injury claims against the State within the prison context. The statute expressly provides that the Secretary of Corrections lacks the statutory authority to pay any claim of 'an amount of more than $500.' K.S.A. 46-920(a).

"This statute explains why the joint committee option is provided within the regulations. The DOC does not have the authority or ability to disburse funds in excess of $500. In the present case, Bates was seeking relief in excess of $75,000 for very substantial alleged physical injuries. Clearly, he could not obtain comparable relief from the DOC. Therefore, it is logical that joint committee claims are intended to be part of the administrative procedure and were established by rules and regulations promulgated by the Secretary of Corrections.

"Also, the State's claim that the DOC should be given an opportunity to settle the claim internally runs counter to this same logic. To ask an inmate to bring a claim such as Bates' to an agency with authority to pay only $500 has no reasonable basis. We acknowledge that it is easy to claim injury of over $500, even if none actually occurred. However, in the instant case, that does not appear to be the situation." *Bates*, 31 Kan. App. 2d at 517.

Finding Bates had submitted proper documentation to establish that he had filed a claim with the joint committee prior to refiling his civil lawsuit against the State of Kansas, the court held Bates had exhausted his administrative remedies under K.A.R. 44-16-104, as required by K.S.A. 75-52,138. *Bates*, 31 Kan. App. 2d at 518. The court did not address any issue related to the time period between the date Bates sustained his injury and the date he presented his claim to satisfy the exhaustion requirement because K.A.R. 44-16-104 did not impose any sort of time deadline for exhausting administrative remedies.

Although applicable to the claim presented in *Bates*, K.A.R. 44-16-104 was revoked in its entirety on February 15, 2002. For the next 5-plus years, there were no administrative regulations governing inmate claims for personal injury. On June 1, 2007, however, K.A.R. 44-16-104a became effective. This regulation states as follows:

"(a) Each inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury.

"(b) Each claim described in subsection (a) shall be submitted and processed in accord with the department of corrections' internal management policies and procedures.

"(c) The requirement that the inmate submit the claim as described in subsection (a) shall apply whether or not the inmate pursues a grievance pursuant to article 15 and whether or not the inmate files a claim with the legislative joint committee on special claims against the state." K.A.R. 44-16-104a (2008 Supp.).

The exhaustion requirements set forth in K.A.R. 44-16-104a (2008 Supp.) are more rigorous and demanding than the requirements set forth in K.A.R. 44-16-104 (2000), the previous version of the regulation. Prior to June 1, 2007, an inmate could present a personal injury claim to the prison or to the joint committee for purposes of exhausting administrative remedies, but now the inmate must present such a claim to the prison to properly exhaust. Prior to June 1, 2007, an inmate could present a personal injury claim to the prison at any time after sustaining the injury for purposes of exhausting administrative remedies, but now the inmate must present such a claim within 10 days of sustaining the injury in order to properly exhaust.

*The Effect of Failing to Exhaust Remedies on Subject Matter Jurisdiction*

Having provided the relevant procedural background for both this lawsuit and the administrative regulation at issue, we turn to Chelf's claim that the district court erred in summarily dismissing his petition for negligence under the KTCA for lack of subject matter jurisdiction because he failed to timely exhaust administrative remedies. We review a district court's decision granting a motion to dismiss under a de novo standard of review. *Wachter Management Co. v. Dexter & Chaney, Inc.*, 282 Kan. 365, 368, 144 P.3d 747 (2006). When the district court has granted a motion to dismiss, this court must assume the truth of the facts alleged by the plaintiff, along with any inferences that can reasonably be drawn from those facts. This court will then decide whether those facts and inferences state a claim under any possible theory. *Jones v. State*, 279 Kan. 364, 366, 109 P.3d 1166 (2005).

Chelf's case was dismissed by the district court upon the State's motion, which was made pursuant to both K.S.A. 60-212(b)(1)

(lack of subject matter jurisdiction) and K.S.A. 60-212(b)(6) (failure to state a claim upon which relief can be granted). Although the district court failed to designate by number the statutory subsection upon which it relied to dismiss the case, the following summary of the court's analysis readily establishes that the court rendered its decision pursuant to K.S.A. 60-212(b)(1)—lack of subject matter jurisdiction:

- K.A.R. 44-16-104a(a) became effective on June 1, 2007;
- K.A.R. 44-16-104a(a) dictates that an inmate claim for personal injury shall be submitted to the facility and Secretary of Corrections within 10 calendar days of the claimed personal injury;
- Chelf's injury occurred on June 18, 2007;
- Chelf submitted his personal injury claim to the facility and Secretary of Corrections on February 14, 2008, which was outside of the 10-day period within which such a claim must be submitted;
- Chelf's failure to timely exhaust the applicable DOC administrative remedies (*i.e.*, file his personal injury claim within 10 days of his injury) as required by K.S.A. 75-52,138 deprives the court of the requisite jurisdictional authority to entertain Chelf's KTCA lawsuit against the State of Kansas.

Subject matter jurisdiction is vested by statute or constitution and establishes the court's authority to hear and decide a particular type of action. Parties cannot confer subject matter jurisdiction upon the courts by consent, waiver, or estoppel. Parties cannot confer subject matter jurisdiction by failing to object to the court's lack of jurisdiction. If a trial court determines that it lacks subject matter jurisdiction, it has absolutely no authority to reach the merits of the case and is required as a matter of law to dismiss it. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009); see K.S.A. 60-212(h)(3). Whether subject matter jurisdiction exists is an issue of law over which we have unlimited review. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 622-23, 24 P.3d 128 (2001).

In this case, the district court had good reason to assume that an inmate's failure to exhaust administrative remedies deprived the court of subject matter jurisdiction over a civil action. This is because we have said as much before. See, *e.g., Corter v. Cline*, 42 Kan. App. 2d 721, 724, 217 P.3d 991 (2009) (holding that failure to exhaust administrative remedies deprived the court of jurisdiction to consider claims brought under K.S.A. 60-1501); *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 19, 203 P.3d 1 (2008) (same); *Litzinger v. Bruce*, 41 Kan. App. 2d 9, 11-12, 201 P.3d 707 (2008) (same); *Laubach v. Roberts*, 32 Kan. App. 2d 863, 869-70, 90 P.3d 961 (2004) (same). The holding in these cases, however, directly conflicts with other appellate cases in Kansas that have addressed the identical issue. Although acknowledging that strict compliance with exhaustion requirements is a necessary procedural prerequisite to filing a civil action, both this court and the Kansas Supreme Court have held that compliance with exhaustion requirements is necessarily subject to the general principles of equity, including but not limited to circumstances where administrative remedies were inadequate or compliance with administrative procedures would serve no purpose. See *In re Pierpoint*, 271 Kan. at 625; *McMillan v. McKune*, 35 Kan. App. 2d 654, 659-61, 135 P.3d 1258 (2006); *McComb v. State*, 32 Kan. App. 2d 1037, 1042, 94 P.3d 715, *rev. denied* 278 Kan. 846 (2004). To date, no Kansas appellate court has acknowledged, let alone resolved, the apparent conflict in cases with regard to whether the inmate exhaustion requirement is merely a prerequisite to suit subject to equitable principles such as waiver and estoppel or whether it is a requirement that implicates the rigid principles of subject matter jurisdiction.

Notably, however, the United States Supreme Court has issued a number of significant opinions over the course of the last few years that discuss the frequency with which courts, such as ours, have confused jurisdictional constraints with nonjurisdictional concepts. Concerned about the vanishing distinction between the mandatory requirements of a cause of action and jurisdiction over that cause of action, the Court in 2006 drew the following "administrable bright line" between the two:

"If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. [Citation omitted.] But when [the Legislature] does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).

The Court consistently has adhered to the *Arbaugh* standard in evaluating the jurisdictional nature of statutory provisions. More specifically, we note that each time it has considered a statute requiring a plaintiff to proceed in another forum or seek redress in other ways as a precondition to the continuing viability of a legal action, the Court has characterized the requirement as a claim-processing rule separate and distinct from the concept of subject matter jurisdiction. See *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168-69, 130 S. Ct. 1237, 176 L. Ed. 2d 17 (2010) (requirement to register copyright before filing lawsuit alleging infringement thereof); *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U.S. 67, 72-73, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009) (requirement to conference before seeking arbitration); *Jones v. Bock*, 549 U.S. 199, 202, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (requirement to file claim with prison authorities before filing federal lawsuit alleging unconstitutional prison conditions); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982) (requirement to file charge with EEOC before filing in court).

In *Muchnick*, the Court considered the jurisdictional nature of a statutory provision within the Copyright Act dictating that "no civil action for infringement . . . shall be instituted until preregistration or registration . . . has been made." See 17 U.S.C. § 411(a) (2006 ed. Supp. III 2009). We find the Court's preliminary observations on the issue of subject matter jurisdiction to be particularly instructive and especially candid:

"While perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice. Courts—including this Court—have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis. [Citations omitted.] Our recent cases evince a marked desire to curtail such 'drive-by juris-

dictional rulings,' [citations omitted], which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action. [Citations omitted.]

"In light of the important distinctions between jurisdictional prescriptions and claim-processing rules, [citation omitted], we have encouraged federal courts and litigants to 'facilitat[e]' clarity by using the term 'jurisdictional' only when it is apposite. [Citation omitted]." 559 U.S. at 161.

The Court in *Muchnick* ultimately held that the registration requirement was a precondition to filing a copyright infringement claim that does not restrict a federal court's subject-matter jurisdiction with respect to infringement suits involving unregistered works. In so holding, the Court reasoned that it had historically "treated as nonjurisdictional other types of threshold requirements that claimants must complete, or exhaust, before filing a lawsuit." 559 U.S. at 166.

In *Jones*, the Court was presented with an exhaustion requirement under the Prison Litigation Reform Act (PLRA) strikingly similar to the one here: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a)." 549 U.S. at 204. Although acknowledging that "exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," the parties in *Jones* agreed that exhaustion is "typically regard[ed] . . . as an affirmative defense," and the Court agreed, noting that it consistently "referred to exhaustion in these terms." 549 U.S. at 211, 212. The PLRA's "silen[ce] on the issue whether exhaustion" was an affirmative defense or an element of a plaintiff's claim, the Court reasoned, was "strong evidence that the usual practice" of treating it as an affirmative defense should be followed. 549 U.S. at 212.

Applying the fundamental principles of subject matter jurisdiction in a manner consistent with that articulated by the United States Supreme Court in the cases set forth above, we find the exhaustion requirements set forth in K.S.A. 75-52,138 do not have the hallmarks of a jurisdictional decree. See *Arbaugh*, 546 U.S. at 515-16 (statutory requirement will not be deemed jurisdictional

unless the statute itself reflects a clear indication that the legislature wanted the requirements to be jurisdictional). Most notably, the exhaustion statute "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes*, 455 U.S. at 394. Instead, the requirement merely "establishes a condition"—exhaustion—"that plaintiffs ordinarily must satisfy" before filing a civil action against the state, which essentially creates a procedural bar virtually indistinguishable from a statute of limitations. *Muchnick*, 130 S. Ct. at 1242. We also find persuasive the fact that the legislature chose to codify the exhaustion requirement under a catchall category designated as "Miscellaneous Provisions" within the comprehensive statutory scheme setting forth the powers and duties of the Secretary of Corrections. See K.S.A. 75-52,116 *et seq.*

In sum, we hold the exhaustion requirement set forth in K.S.A. 75-52,138 is a mandatory, but nonjurisdictional, prerequisite to filing suit that must be strictly enforced by the court. Because it is not jurisdictional, failure to exhaust administrative remedies as required by this particular statute may be subject to certain equitable defenses.

## Equitable Defenses

The district court's decision to dismiss Chelf's petition for lack of subject matter jurisdiction necessarily prevented the court from considering any of the equitable defenses to exhaustion repeatedly presented by Chelf in written briefing and related hearings. Although not necessarily couched in legal terms, Chelf's arguments to the district court were grounded in equitable principles of waiver, estoppel, and futility.

### Waiver

Waiver is the voluntary and intentional relinquishment of a known right and the expression of an intention not to insist upon what the law affords. See *Prather v. Colorado Oil & Gas Corp.*, 218 Kan. 111, 117, 542 P.2d 297 (1975); *Jones v. Jones*, 215 Kan. 102, 116, 523 P.2d 743, *cert. denied* 419 U.S. 1032 (1974). "Waiver must be manifested in some unequivocal manner by some distinct

act or by inaction inconsistent with an intention to claim forfeiture of a right." *Patrons Mut. Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 725-26, 830 P.2d 35 (1992). In the context of the waiver issue presented here, this court previously has found the State waived its right to rely on an inmate's failure to timely exhaust when a prison official accepted a belated administrative claim and responded to the merits set forth therein. *McMillan*, 35 Kan. App. 2d at 659-61. At least five federal circuits have come to the same conclusion. See *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (when prisoners' grievances are addressed on the merits notwithstanding procedural errors, including missing time deadlines, then prison officials have waived the procedural errors); *Patel v. Fleming*, 415 F.3d 1105, 1111 (10th Cir. 2005) (same); *Gates v. Cook*, 376 F.3d 323, 331 n.6 (5th Cir. 2004) (same); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (same); *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004) (same).

Here, Chelf filed his personal injury claim for damages approximately 8 months after his injury. An affidavit filed with the district court verified that Officer Jones was the facility Grievance/Property Claim Officer, that Officer Jones reviewed each and every inmate personal injury claim, that Officer Jones received a signed and notarized personal injury claim from Chelf dated February 14, 2008, and that Chelf described the nature of his claim therein as a personal injury sustained when machinery slid off of a forklift and fell on top of him. At some point thereafter, Officer Jones sent Chelf an undated memo communicating the following:

"Your Property Claim (Personal Injury) is being returned to you with no action taken. It has been determined that your claim exceeds $500.00. Therefore, in accordance with IMPP [Internal Management Policies and Procedures] 01-117 & 01-118 Property damage/loss or personal injury exceeding $500.00 that cannot be resolved [for] $500.00 or less shall be filed with the Joint Committee on Special Claims against the State.

"I have attached for your convenience a copy of the form that you will need in which to file your claim with the Joint Committee on Special Claims against the State concerning this issue."

Referring to this written memo, Chelf argued to the district court that the State waived his failure to timely exhaust adminis-

trative remedies because Officer Jones designated the agency's inability to provide him relief in excess of $500—and not untimeliness—as the reason for declining to take action on the claim. In order to prevail on his waiver claim, however, Chelf must provide facts to demonstrate that Officer Jones affirmatively considered Chelf's claim for damages on the merits. The subject of the memo is identified as "Property Claim: no number assigned" and the substance of the memo specifically notes that Chelf's personal injury claim "is being returned to you with no action taken." Based on this language, we simply are not persuaded that Officer Jones affirmatively considered Chelf's claim for damages on the merits.

*Estoppel*

Chelf argued to the district court that "if the [State] cannot follow their rules and regulations of the ten (10) calendar day notice, K.A.R. 44-16-104[a], they should be estopped or have waived their right to claim Chelf failed to follow the applicable K.A.R. 44-16-104[a]." Chelf went on to argue that the State's "interpretation of its own regulations are inopposite and contradictory to the State's position that noncompliance with the ten (10) calendar day requirement extinguishes the plaintiff's claim."

A party asserting equitable estoppel bears the burden to establish the following elements, each of which are necessary to prevail on such a claim: (1) the party was induced to believe certain facts as a result of another person's acts, representations, admissions, or silence when that person was under a duty to speak; (2) the party relied and acted upon those facts; and (3) the party would be prejudiced if the other person were allowed to deny the existence of those facts. *Fleetwood Enterprises v. Coleman Co.*, 37 Kan. App. 2d 850, 865, 161 P.3d 765 (2007) (citing *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 116, 991 P.2d 889 [1999]). Chelf asserts that the State's actions induced him to believe that his claim was timely filed and that he would be prejudiced (in the form of a procedural bar to filing civil suit) if the State were permitted to take a position inconsistent with that taken when he submitted the claim. But Chelf does not provide any facts to establish any of the essential elements necessary to prevail on a claim of estoppel: that

Officer Jones was silent while under a duty to speak, that Chelf relied and acted on any action, representation, or admission by Officer Jones, and that Chelf's administrative claim would have been filed in a timely manner but for actions, representations, or admissions made by Officer Jones.

Instead of equitable estoppel, the substance of Chelf's assertions—that the State's "interpretation of its own regulations are inopposite and contradictory to the State's position that noncompliance with the ten (10) calendar day requirement extinguishes the plaintiff's claim"—appear to rely on principles of quasi-estoppel. While other forms of estoppel require proof of a false representation and proof of detrimental reliance on that false representation, quasi-estoppel does not. The Kansas Supreme Court first introduced the concept of quasi-estoppel in *Powers v. Scharling*, 76 Kan. 855, 859, 92 Pac. 1099 (1907):

> "It is a familiar and well-settled principle that one who with full knowledge of the facts accepts the benefits of a void judicial sale is thereby precluded from questioning its validity. [Citations omitted.] Whether the principle is described as equitable estoppel, quasi-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important. It is really but an application of the homely proverb that one may not eat his cake and have it too."

In other words, quasi-estoppel "involves an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations wherein it would be unconscionable to permit a person to maintain a position inconsistent with one in which [the person] has acquiesced." *Harrin v. Brown Realty Co.*, 226 Kan. 453, 458-59, 602 P.2d 79 (1979).

Given these parameters, we find no merit to Chelf's claim of quasi-estoppel. First, Chelf has not asserted any facts to demonstrate the State's current position—that Chelf's administrative claim was untimely—is inconsistent with Officer Jones' earlier response to Chelf's administrative claim. Second, there is no evidence that Officer Jones was silent while under a duty to speak. Third, and because there is no evidence that the State's current position is inconsistent with one taken in the past, denying Chelf's claim of quasi-estoppel in this case is not unconscionable.

*Futility*

Noticeably different from principles of waiver and estoppel, Kansas courts also recognize a judicially created equitable exception to exhaustion when the administrative remedies available are inadequate or compliance with them would serve no purpose. *In re Pierpoint*, 271 Kan. at 623. In *Pierpoint*, an inmate made two requests for assistance of counsel at a disciplinary hearing, both of which were denied. The inmate subsequently filed a K.S.A. 60-1501 petition without requesting an agency hearing, and the Kansas Department of Corrections responded by claiming that the inmate had failed to exhaust his administrative remedies. The court found that, under these circumstances, there was no reason to believe that another request for the presence of counsel would have yielded a different result. The court held the inmate was not required to exhaust his administrative remedies and noted that "[e]xhaustion of administrative remedies is not required when administrative remedies are inadequate or would serve no purpose." 271 Kan. 620, Syl. ¶ 2.

Citing *Pierpont*, Chelf argued to the district court that exhaustion was not required in this case because the reason given by Officer Jones for declining to take action on his claim—that agency was unable to provide relief in excess of $500—establishes that even if he had filed a timely claim, it would have served no purpose because the result would have been the exact same. We find no merit to this argument, primarily because the underlying premise upon which it relies effectively invalidates K.A.R. 44-16-104a, which provides that any claim for personal injury, regardless of whether the request for relief is more or less than $500, must be submitted by the inmate to the facility within 10 calendar days of the claimed personal injury.

*Procedural Due Process*

As he did with the district court, Chelf asserts here that applying the deadline set forth in K.A.R. 44-16-104a to the facts presented in this case deprives him of the right to procedural due process guaranteed under the United States and Kansas Constitutions. The crux of Chelf's procedural due process claim is not the fact that

the exhaustion deadline for personal injury claims changed from no deadline to 10 days, but that the State failed to provide him with adequate notice of the new deadline before that deadline expired. In summarily dismissing Chelf's claim, the district court incorporated by reference the legal analysis and authority set forth in the State's brief.

When presented with a procedural due process claim, the court first must determine whether a protected liberty or property interest is involved. *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 (2002). To that end, Kansas courts have long held that the right to pursue a remedy for injuries sustained by the tortious act of another is a fundamental constitutional right. *Ernest v. Faler*, 237 Kan. 125, 131, 697 P.2d 870 (1985). Thus, we move on to the next step in analyzing a procedural due process claim, which requires us to examine the nature and extent of the process due. The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Winston*, 274 Kan. at 409.

In this case, the parties agree that prior to June 1, 2007, an inmate could present a personal injury claim to the prison at any time after sustaining the injury for purposes of exhausting administrative remedies. The parties further agree that after K.A.R. 44-16-104a became effective on June 1, 2007, the inmate was required to present such a claim within 10 days of sustaining the injury in order to properly exhaust his administrative remedies. Chelf claims he did not know prior to filing his personal injury claim on February 14, 2008, that the Department of Corrections had adopted a 10-day deadline for filing such a claim. Be that as it may, "[i]gnorance of the law excuses no one; not because courts assume everyone knows the law, but because this excuse is one all will plead and no one can refute." *Dezaio v. Port Authority of NY and NJ*, 205 F.3d 62, 64 (2d Cir. 2000); see also *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 536, 646 P.2d 1091 (1982) (" 'Ignorance of the law is no excuse.' "); *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 88, 367 P.2d 44 (1961) (stating that parties in litigation are presumed to know the law). Based on the facts presented and the applicable law, we find applying the deadline set

forth in K.A.R. 44-16-104a to Chelf did not deprive him of the right to procedural due process.

Affirmed.