NOT DESIGNATED FOR PUBLICATION

No. 115,016

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANTHONY DAVIS,
*Appellant*,

v.

RAY ROBERTS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed November 18, 2016. Reversed and remanded.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Sherri Price*, special assistant attorney general, of Lansing Correctional Facility, for appellee.


Before MCANANY, P.J., PIERRON, J., and BURGESS, S.J.

*Per Curiam*:  In September 2013, Anthony Davis filed a K.S.A. 60-1501 petition alleging that he had been deprived of his Eighth Amendment right to be free from cruel and unusual punishment. The district court dismissed his petition, finding that Davis hadn't exhausted his administrative remedies as required by statute. A careful review of the voluminous and sometimes confusing record on appeal demonstrates that Davis *did* exhaust his administrative remedies. We reverse and remand for the district court to consider the merits of Davis' claim.

FACTUAL AND PROCEDURAL BACKGROUND

Davis has been in prison since 1989, when he was sentenced to life in prison for first-degree felony murder, aggravated arson, and aggravated robbery.

On September 11, 2013, Davis filed a K.S.A. 60-1501 petition alleging that he had been deprived of his Eighth Amendment right to be free from cruel and unusual punishment. According to Davis, at 12:45 a.m. on August 24, 2013, he was using the toilet which he must do frequently because of the medication he takes. During this time, an unscheduled middle-of-the-night inmate count occurred. A correctional officer entered the bathroom and asked Davis to identify himself even though the officer knew Davis. Eventually the officer ordered Davis off of the toilet for the count, causing feces to run down Davis' leg.

Several different and overlapping administrative processes followed this incident. First, at 1:45 a.m., Davis initiated a facility-level administrative grievance against the correctional officer by attempting "to reach an informal resolution" with the correctional officer.

At 2:15 a.m., the correctional officer filed a disciplinary report against Davis for disobeying orders and insubordination. According to Davis' counsel, this disciplinary matter was diverted so that Davis could pursue his grievance. It seems that the disciplinary case was eventually dismissed. The record on appeal contains only limited documentation of the disciplinary proceeding, and Davis' complaints in this case are not about that proceeding.

On August 25, 2013, Davis sent a special-problems grievance directly to the Secretary of Corrections. On August 30, the Secretary denied Davis' grievance because "special problem grievances should be reserved for the most difficult and complex

problems" and directed Davis to use the standard "inmate grievance procedure available at the facility level."

On September 3, 2013, Davis returned to the facility-level grievance that he had begun 10 days earlier (at 1:45 a.m. on August 24) and sent it to the warden. The warden denied the grievance, stating that Davis couldn't use a grievance to complain about a disciplinary proceeding.

Davis then sent his facility-level grievance to the secretary of Corrections on September 20. The Secretary also denied the grievance, stating: "Your complaint is clearly about the inmate disciplinary procedure. K.A.R. 44-15-101(a)(d)(2) prohibits use of the grievance procedure to address this concern."

On April 30, 2014, as part of a pro se memorandum supporting his K.S.A. 60-1501 petition, Davis filed documents with the district court related to the special-problems grievance, the disciplinary proceeding, and the facility-level grievance.

On May 14, 2014, the State moved to dismiss Davis' petition, alleging that Davis hadn't exhausted his administrative remedies as required by statute. Davis filed two responses, one on his own on May 19, 2014, and one with appointed counsel on August 22, 2014. The district court held three nonevidentiary hearings to clarify the specifics of Davis' petition. On January 6, 2015, the district court granted the State's motion to dismiss.

Davis appeals to our court.

3

ANALYSIS

Davis argues that he exhausted his administrative remedies, so the district court should not have dismissed his K.S.A. 60-1501 petition.

K.S.A. 75-52,138 requires inmates to exhaust their administrative remedies before filing a civil case against the State or a public official and to file proof of exhaustion with their K.S.A. 60-1501 petition. The exhaustion requirement is a mandatory but nonjurisdictional, prerequisite to filing suit that must be strictly enforced by the court but for certain equitable defenses. *Chelf v. State*, 46 Kan. App. 2d 522, 533, 263 P.3d 852 (2011). Whether an inmate has exhausted administrative remedies is a question of law over which we have unlimited review. We owe no deference to the district court's conclusion. See *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 622-23, 24 P.3d 128 (2001).

K.A.R. 44-15-101 *et seq.* governs the administrative grievance process. The grievance process exists for inmates to address a broad range of problems, including complaints about actions by employees and incidents occurring within the facility. K.A.R. 44-15-101a(d)(1)(B). The procedure for an administrative grievance has three steps:  (1) an informal request to prison personnel or unit team members; (2) a formal complaint to the warden; and (3) an appeal to the Secretary of Corrections. K.A.R. 44-15-101(b), (d).

The first step of a grievance procedure is to attempt an informal resolution of the problem with the personnel who work with the inmate directly or on a daily basis. K.A.R. 44-15-101(b), (d)(1); K.A.R. 44-15-102(a). Davis told the district court that he completed this step, and he directed the court to a document he filed supporting his K.S.A. 60-1501 petition. This document, labeled an inmate grievance form, claims that on August 24, 2013, at 1:45 a.m., Davis attempted to reach an informal resolution of the problem. It

4

does not actually describe the problem that Davis attempted to resolve, which perhaps explains why the district court did not view this document as an informal grievance about the toilet incident. However, it gave the date and time and it clearly relates to that event. The document is signed by a member of Davis' unit team and dated August 23-24, 2013. Admittedly, other information included in this document creates some confusion. It also says it is a "Sexual Abuse Grievance," mentions a request for a disciplinary diversion, and asks for agents to be prosecuted by an outside agency. (Davis does, at times, characterize his grievance as related to sexual abuse.) In all events, the document still shows that Davis completed the first step of the grievance procedure by attempting informal resolution.

In the second step of the grievance procedure, the inmate can complain to the warden if the inmate doesn't obtain a satisfactory solution within 10 days of the informal attempt at resolution. K.A.R. 44-15-101(d)(2); K.A.R. 44-15-102(b). Davis also completed this step. He submitted his grievance to the warden on September 3, 2013, 10 days after he attempted to informally resolve the issue. Davis directed the district court to this document as well, but his statements were somewhat confusing and nonspecific. He just pointed the district court to 13 pages of exhibits that he had filed with the court. But the grievance to the warden is within those 13 pages, and it includes a handwritten attachment detailing the toilet incident. Davis explained in the document that the correctional officer who ordered him off the toilet had refused to sign the informal-resolution grievance form but that a different officer in his unit team had signed the form. This clearly refers to the informal-resolution attempt documented as discussed above. Davis also noted that he was sending his grievance to the warden since 10 days had passed since he had tried to informally resolve the problem. Again, this document includes a lot of confusing sentences and irrelevant details, but it does show that Davis complied with step two of the grievance procedure.

The warden denied Davis' grievance without assigning it a number on September 18. See K.S.A. 44-15-102(b)(3) (warden's response). According to the warden, "the issues raised in [Davis'] grievance concern the inmate disciplinary procedure." See K.A.R. 44-15-101a(d)(2) (grievance procedure is not a substitute for or a part of the inmate disciplinary procedure). As we have noted, it is true that the toilet incident led to a disciplinary report against Davis, dated August 24, 2013, at 2:15 a.m. According to Davis' grievance to the warden, the correctional officer filed the disciplinary report in retaliation for his informal grievance, which he filed earlier that night, at 1:45 a.m. See K.A.R. 44-15-104 (prohibiting reprisals when inmates file grievances). That section of the grievance is arguably related to the disciplinary proceeding, which is perhaps why the warden construed Davis' grievance as he did. But Davis' grievance also complained that he was ordered off the toilet without being able to clean himself for a middle-of-the-night inmate count. That is clearly a claim separate and apart from the disciplinary proceeding. Davis complied with step two of the grievance procedure, and the warden denied his grievance without addressing the toilet incident.

Step three of the grievance procedure is an appeal to the Secretary of Corrections: "If the warden's answer is not satisfactory, the inmate may appeal to the secretary's office . . . within three calendar days of receipt of the warden's decision." K.A.R. 44-15-101(d)(3); K.A.R. 44-15-102(c)(1). Davis also complied with this step, directing the district court again nonspecifically to 13 pages of confusing exhibits. Within those 13 pages is Davis' grievance to the Secretary that he sent on September 20, 2013, 2 days after the warden's unsatisfactory response. Davis wrote in this document that he had been ordered off the toilet while performing bodily functions. On September 24, the Secretary denied Davis' grievance, saying it was "clearly about the inmate disciplinary procedure." See K.A.R. 44-15-101a(d)(2).

It seems clear that Davis wrote his grievance *before* the disciplinary complaint was filed. Davis did include language extraneous to his original grievance in his filings to the

6

warden and the Secretary of Corrections. However, it is clear that Davis' filings with the warden and the Secretary included the issues he originally set forth in his grievance filed at 1:45 a.m. on August 24, 2013.

Our careful review of the record demonstrates that Davis exhausted his administrative remedies. Davis filed his petition on September 11, 2013, before he exhausted his administrative remedies on September 24, 2013. But he did actually exhaust those remedies and filed proof of that exhaustion with the court in a supplemental filing. *Cf. Chelf*, 46 Kan. App. 2d at 533 (exhaustion is mandatory but not jurisdictional and subject to equitable concepts); *Laubach v. Roberts*, 32 Kan. App. 2d 863, 868-69 90 P.3d 961 (2004) (construing strict compliance with the exhaustion requirement to mean simply that all necessary documents are attached). This court will not dismiss Davis' petition simply because he filed it 13 days before he finished exhausting his administrative remedies or because he filed proof of exhaustion not *with* his petition but in a later court filing.

Reversed and remanded.