# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENNETH A. HINTON,      )
                        )
      **Plaintiff,**        )
                        )
      **v.**                )         **Civil Action No. 08-312 (RWR)**
                        )
**CORRECTIONS CORPORATION OF**  )
**AMERICA et al.,**          )
                        )
      **Defendants.**      )

## MEMORANDUM OPINION

Plaintiff Kenneth A. Hinton filed this suit against the operators of the Central Treatment Facility ("CTF"), a correctional facility in the District of Columbia. Defendants have filed a motion to dismiss and the plaintiff has filed an opposition. Because defendants have established that the plaintiff did not exhaust his administrative remedies before filing this action as the law requires, the defendants will be granted summary judgment.

## BACKGROUND

The complaint alleges that "from on or about May 25, 2007," while Hinton was confined in the CTF, overcrowded and unsanitary conditions there caused him to become infected with the methicillin-resistant Staphylococcus aureus ("MRSA") bacteria. Compl. at 3. The complaint, filed on a form for claims brought under 42 U.S.C. § 1983 for civil rights violations, does not mention any specific civil rights violation, but repeatedly employs the phrases "deliberate indifference" and "bad faith," which are commonly associated with Eighth Amendment violations. The defendants interpreted the complaint as one brought under § 1983 for violation of the Eighth Amendment, and the plaintiff has neither objected to that interpretation nor

otherwise corrected it. That interpretation is a reasonable one, and the complaint will be construed as one under § 1983.

The complaint alleges that CTF staff ignored his requests for cleaning supplies and disinfectants with which to sanitize his cell and surroundings, and that as a result of the MRSA infection, he suffered painful medical treatment, mental anguish and emotional distress, and now has a scar on his upper thigh and elbow from the medical treatment. Compl. at 4. Hinton seeks two million dollars in compensatory and punitive damages. *Id.*

In a declaration filed with his complaint, Hinton states that between May 28 and August 22, 2007, he "submitted numerous 'Institutional Inmate Grievances' to the CCA/CTF staff and particular[ly] to the attention of John Caulfield, Warden, regarding the unhealthy, unsafe and unsanitary conditions [that he] and other inmates were exposed to as a proximate result of not being provided requested cleaning supplies and disinfectants to clean [their] cells." Decl. of Kenneth Hinton (Aug. 31, 2007) (original spelling and punctuation altered). Hinton's declaration also states that he "notified the Warden, John Caulfield via 'inmate request to staff' forms and grievances that were logged with the designated CCA/CTF Grievance Officer, Ms. Allen." *Id.*

Defendants have moved to dismiss the complaint contending that the plaintiff did not exhaust all available administrative remedies as is required by law. The motion to dismiss is supported by a sworn statement from the CTF's Facility Grievance Officer, Joyce Allen, attesting that her review of the grievance log for 2007 showed that Hinton had filed six inmate grievances, but that none of them related to his MRSA infection or the allegedly unsanitary conditions at the CTF, which are the subject of this suit. *See* Affidavit of Joyce Allen (Mar. 31, 2008) ("Allen

Aff.") ¶¶ 12, 19 (appending copies of the grievances). The Allen affidavit explains that any grievance involving medical services is logged into the grievance log and then forwarded to a different contractor who provides the medical services, which the defendants do not provide. *Id.* ¶ 5. In accordance with CTF policy at the time, all inmates were provided upon arrival in the CTF with an Inmate Handbook containing a summary of the facility's grievance policies and procedures. *Id.* ¶¶ 6,7. CTF inmates also had access to the complete grievance policy at each housing unit and the CTF law library, as well as from CTF staff. *Id.* ¶ 7. CTF policy encouraged inmates to submit an Inmate Request Slip or speak to any staff member about their grievance before initiating the first step of the official grievance process. *Id.* ¶ 8. The official grievance process in effect at the time consisted of five sequential steps, each subject to strict deadlines. *Id.* The regular process required two steps involving written submissions before any grievance would be directed to the Warden's attention, which occurred at the third step in the process, and only if the grievance had not already been resolved, and only if the deadlines at each step to that point had been met. *Id.* At the time Hinton was confined at the CTF, an inmate could bypass the first step of the five-step process, but only if the grievance was initiated at the second step within seven days of the triggering incident. *Id.* ¶ 9. The grievance policy also had procedures for emergency grievances, such that if an inmate filed an emergency grievance, the CTF grievance officer would review the grievance within 24 hours to determine whether the situation did, in fact, constitute an emergency. If an emergency exists, the grievance officer would prepare a response within 72 hours of receipt of the grievance. *Id.* ¶ 11.

In his opposition, Hinton stated that the CTF grievance officer never informed him that he "must exhaust his administrative remedies regarding his need for reasonable, diligent, and

expedient medical care." Opp'n at 2. He further stated that he "followed all available 'emergency remedy' procedures that [were] communicated to him by the CCA/CTF unit manager and nurse who assessed the plaintiff's need for medical care." *Id.* On this basis, Hinton argues that he did properly exhaust all available administrative remedies.

DISCUSSION

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under . . . [any] Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "There is no question that exhaustion is mandatory under the PLRA . . . ." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Failure to exhaust under the PLRA is an affirmative defense that a defendant may plead or raise on motion.[1] *See id.* at 211-212.

When a court considers documents and declarations filed by the parties that were not "either attached to or incorporated in the complaint," a motion to dismiss for failure to state a

---

[1] The law is unsettled, however, on the question of the extent to which waiver, equitable estoppel or tolling can apply to defeat the affirmative defense of non-exhaustion under the PLRA. In this circuit, it does appear that a defendant may waive the defense of non-exhaustion by not raising it. *See Ali v. District of Columbia,* 278 F.3d 1, 5-6 (D.C. Cir. 2002) (concluding that the PLRA's exhaustion requirement is not jurisdictional and noting that it had considered a waiver argument in *Jackson v. District of Columbia*, 254 F.3d 262, 267 (D.C. Cir. 2001)). Unlike other circuits, though, this circuit has not held that equitable estoppel may defeat the defense of non-exhaustion. *See Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir. 2004) (holding that PLRA's exhaustion requirement is subject to equitable estoppel); *Wright v. Hollingsworth,* 260 F.3d 357, 358 n.2 (5th Cir. 2001); *Wendell v. Asher,* 162 F.3d 887, 890 (5th Cir. 1998) (stating that the amended PLRA statute imposes an exhaustion "requirement, rather like a statute of limitations, that may be subject to certain defenses such as waiver, estoppel, or equitable tolling"); *see also Jernigan v. Stuchell,* 304 F.3d 1030, 1033 (10th Cir. 2002) (not deciding whether estoppel applies to PLRA exhaustion because plaintiff had not established elements of estoppel); *Lewis v. Washington,* 300 F.3d 829, 834 (7th Cir. 2002) (noting that the Fifth Circuit's application of estoppel to PLRA exhaustion was "persuasive," but not deciding whether estoppel applies to PLRA exhaustion because plaintiff did not present facts to establish estoppel).

claim must be treated as one for summary judgment. *Egilman v. Keller & Heckman, LLP,* 401 F. Supp. 2d 105, 109 (D.D.C. 2005). A court must grant a motion for summary judgment "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a party "fails to establish the existence of an element essential to his case and on which [that party] will bear the burden of proof at trial," summary judgment is warranted. *Hazward v. Runyon,* 14 F. Supp. 2d 120, 123 (D.D.C. 1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

When ruling on a summary judgment motion, a court is bound to draw "all justifiable inferences" in the nonmoving party's favor and accept the nonmoving party's evidence as true, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Bias v. Advantage Int'l, Inc.,* 905 F.2d 1558, 1561 (D.C. Cir. 1990) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, it must "provide evidence that would permit a reasonable [fact-finder] to find" in the non-moving party's favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C. Cir. 1987).

In this case, the defendants have established that the inmate grievance process at the CTF had multiple distinct steps that had to be taken within certain time periods and in a certain sequence, and that an emergency grievance had to qualify as an emergency to be processed as such. The Allen affidavit established that the institution's grievance log shows that the plaintiff

initiated six grievances, none of which relates to the subject matter of this case. The plaintiff has responded that the grievance officer did not tell plaintiff that he needed to file a grievance regarding his medical treatment.[2] This response does not raise a genuine issue of material fact, but rather concedes that no grievance was filed. The plaintiff has not offered evidence of affirmative misconduct by prison officials that prevented the plaintiff from initiating and exhausting all available administrative remedies that might justify the application of estoppel to defeat the defense. The plaintiff does not dispute that he received an Inmate Handbook containing a summary of the grievance process, and the record shows clearly that he had access to the Inmate Handbook and was familiar with parts of it. *See* Allen Aff., Att. B (Hinton's inmate grievance filed May 4, 2007, citing page 12 of the Inmate Handbook). The plaintiff also does not dispute that he had other means of informing himself of the requirements of the official grievance process. Plaintiff has averred that he submitted numerous institutional inmate-to-staff grievances to the CCA/CTF staff and particularly to the attention of the Warden, and that he followed all available "emergency remedy" procedures communicated to him by the CCA/CTF unit manager and nurse. Opp'n at 2. Crediting plaintiff's statements as true, the plaintiff has not provided evidence that establishes that he followed the prescribed grievance procedures in sequence and met the requirements at each step, thereby exhausting all available administrative remedies, or that defendants' conduct should operate to defeat the defense of non-exhaustion.

_____

[2] In accord with its obligation, the Court makes no credibility determinations about the plaintiff's assertion that he was not aware of the need to exhaust his administrative remedies regarding the medical staff's response to his MRSA infection in the days after May 25, 2007, even though prior to that time he had filed a medical grievance regarding his prescription eyeglasses. Allen Aff. ¶ 14 (reporting that the Grievance Log showed that on May 14, 2007, Hinton submitted Medical Grievance 07-295 complaining that he had not received his prescription eyeglasses).

CONCLUSION

Because the plaintiff has not provided evidence that would permit a reasonable fact-finder to conclude on this record that plaintiff exhausted all available administrative remedies, a prerequisite to this suit, summary judgment for the defendant is warranted and will be granted.

A separate order accompanies this memorandum opinion.

SIGNED this 9th day of June, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge