IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,455

JEFFREY SPERRY,
*Appellant*,

v.

DAVID MCKUNE (Warden), *et al.*,
(Raymond Roberts, Kansas Department of Corrections),
*Appellees*.

SYLLABUS BY THE COURT

1.

A petition may be dismissed under K.S.A. 2015 Supp. 60-212(b)(6) for failure to state a claim upon which relief can be granted. A district court considering a motion to dismiss filed under K.S.A. 2015 Supp. 60-212(b)(6) must decide the motion from the well-pleaded facts of plaintiff's petition.

2.

Under K.S.A. 2015 Supp. 60-210(c), a written instrument attached as an exhibit to a pleading is a part of the pleading for all purposes. Hence, documents attached to a petition can be considered when ruling on a motion to dismiss under K.S.A. 2015 Supp. 60-212(b)(6).

3.

If, on a motion under K.S.A. 2015 Supp. 60-212(b)(6) or (c), matters outside the pleadings are presented to and not excluded by a court, the motion must be treated as one

for summary judgment under K.S.A. 2015 Supp. 60-256. As defined in K.S.A. 2015 Supp. 60-207(a), a "pleading" consists of a petition and an answer.

4.

When a motion to dismiss converts to a motion for summary judgment, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. K.S.A. 2015 Supp. 60-256 and Supreme Court Rule 141 (2015 Kan. Ct. Annot. 242) govern the form and manner of presenting these outside matters.

5.

Before an inmate in the custody of the Kansas Secretary of Corrections files a civil suit against the state, any political subdivision of the state, or any public official, K.S.A. 75-52,138 requires an inmate to (1) exhaust administrative remedies established by rules and regulations promulgated by the secretary of corrections and (2) file with the inmate's petition proof that the administrative remedies have been exhausted.

6.

Both federal and state law require an inmate in the custody of the secretary of corrections to exhaust administrative remedies before filing a lawsuit. But only a state claim is impacted by K.S.A. 75-52,138's requirement that an inmate file proof of having exhausted administrative remedies; the requirement does not apply to a federal claim.

7.

A district court considering a motion to dismiss filed under K.S.A. 2015 Supp. 60-212(b)(6) errs when it considers matters outside the pleadings without requiring litigants to comply with Supreme Court Rule 141 (2015 Kan. Ct. Annot. 242). The error can be harmless if, for example, (1) the district court had excluded from its consideration

any matters outside those in the petition; (2) the additional material did not otherwise infect the district court's consideration; or (3) the subsequent filings allowed for the proper presentation of the minimal number of uncontroverted facts required to establish a defendant's entitlement to relief. Reversible error occurs, however, if an appellate court cannot determine what facts are or are not controverted or on what evidence the litigants rely.

8.

While a court will liberally construe the pleadings of pro se litigants, pro se litigants must still follow procedural rules.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 5, 2015. Appeal from Leavenworth District Court; DAN K. WILEY, judge. Opinion filed November 23, 2016. Judgment of the Court of Appeals affirming in part, reversing in part, and remanding is reversed on the issues subject to review. Judgment of the district court is reversed on the issues subject to review and remanded with directions.

*Jeffrey J. Sperry*, appellant, was on the brief pro se.

*Fred W. Phelps, Jr.*, legal counsel, Kansas Department of Corrections, was on the brief for appellees.

The opinion of the court was delivered by

LUCKERT, J.*:* K.S.A. 75-52,138 requires prison inmates to (1) exhaust administrative remedies before filing a civil lawsuit against the Kansas Secretary of Corrections, a prison warden, or certain other officials and (2) file proof of that exhaustion when initiating the suit. This appeal raises procedural issues regarding these requirements and the standards for deciding motions to dismiss and for summary

3

judgment. Because we determine the district court and Court of Appeals failed to apply the correct standard, we reverse and remand.

FACTUAL AND PROCEDURAL HISTORY

In September 2011, Jeffrey Sperry, an inmate at the Lansing Correctional Facility (LCF), filed a lawsuit in district court seeking civil damages from the LCF Warden, the Secretary of Corrections for the State of Kansas, and the Kansas Department of Corrections (KDOC) (collectively, the KDOC defendants). Sperry, acting on his own behalf, alleged he had been exposed to asbestos and lead paint while incarcerated at LCF. After Sperry filed his lawsuit, this case's procedural path involved a series of motions to dismiss that eventually led to this appeal. Those motions focus on the allegations in Sperry's verified petition, which he captioned a "Complaint."

In that document, Sperry alleged that in January 2010 he first learned he had been exposed to contaminants. He sought medical treatment in March 2010, but a "facility doctor examined [Sperry] and told him that there was nothing he could do for him." Sperry also sought "mental health counseling," but the "psychologist simply told [Sperry] that worrying would not help his condition so he should not worry about the fact that he will become seriously ill and die prematurely due to the exposure." To remedy these alleged wrongs, Sperry sought an injunction ordering the KDOC defendants to treat Sperry's current and future medical needs through medical personnel and facilities of Sperry's choosing; an injunction ordering the KDOC defendants to remove all dangerous environmental contaminants from LCF; a declaratory judgment that the KDOC defendants "knowingly and/or recklessly caused [Sperry] to be exposed to friable asbestos and lead paint"; and monetary damages in excess of $75,000.

4

As a means of obtaining this relief, Sperry alleged causes of action based on both federal and state law. He first alleged his federal cause of action, asserting he was entitled to redress under 42 U.S.C. § 1983 (2012) because the KDOC defendants violated his right under the United States Constitution to be free from cruel and unusual punishment. He then alleged several torts governed by Kansas law: negligence, battery, breach of fiduciary duty, and outrageous conduct.

Sperry also addressed his efforts to obtain administrative relief prior to filing his lawsuit. According to him:

- He filed his first internal grievance with LCF in March 2010, but "[t]he facility refused to process the grievance." He did not attach any documents related to this first grievance, but he did attach a contemporaneous claim he filed with the Joint Committee on Special Claims Against the State, pursuant to K.S.A. 46-907 *et seq.*, which was denied in September 2010.

- He filed a second grievance with LCF in October 2010, but LCF lost the form. Sperry did not attach a copy of this second grievance, either, but he included a document from a KDOC official acknowledging this filing and stating, "I can only suspect that it was lost in the mail or misplaced."

- He filed a replacement grievance in November 2010, which was "denied all the way through to the Secretary of [C]orrections on December 17, 2010." Sperry attached this third grievance and related documents to his "Complaint."

These attached documents show that Sperry filed the November grievance on KDOC forms relating to one of two KDOC administrative procedures that potentially applied to his claims. KDOC defines both procedures in its regulations. K.A.R. 44-15-101 *et seq.* defines one procedure (article 15 procedure) for grievances relating to, for example, prison conditions. K.A.R. 44-16-102 *et seq.* defines the other (article 16 procedure), which applies when an inmate claims property damage or personal injury. KDOC has adopted separate forms for each procedure.

From the documents attached to Sperry's petition, we know that Sperry used an article 15 form when filing his November 2010 grievance and that the grievance was reviewed and denied at three administrative levels—by his unit supervisor, the Warden, and the Secretary of Corrections. Ultimately, the Secretary, incorporating the previous responses, denied Sperry's claim because Sperry had not been exposed to harmful contaminants and had not filed an article 16 claim even though he claimed personal injury and sought monetary damages.

In response to Sperry's petition in district court, the KDOC defendants filed multiple motions to dismiss the lawsuit. The first motion raised various issues not presented in this appeal:  whether the KDOC defendants lacked the capacity to be sued, whether they enjoyed immunity, and whether Sperry failed to adequately allege various claims. Then, in a "Supplement to Motion to Dismiss," the KDOC defendants raised the issue now before us:  whether Sperry exhausted his administrative remedies before filing suit. The KDOC defendants' arguments focused on Sperry's failure to file an article 16 claim. To support this argument, the KDOC defendants attached an affidavit of the Grievance/Property Claims Officer at LCF, who stated he reviewed all available LCF records and was unable to find any personal injury claim filed by Sperry.

6

Sperry responded to both the motion and its supplement, raising several legal arguments regarding the KDOC defendants' capacity to be sued and the reasons they were not immune, the sufficiency of his allegations, and the inapplicability of article 16. He pursued some of those arguments before the Court of Appeals but did not advance them in his petition for review filed with this court. But Sperry also replied to the motions by raising an issue preserved for our review: He argued the KDOC defendants waived any requirement that he exhaust an article 16 procedure by taking certain actions during the grievance process. When Sperry first raised his waiver argument, he asserted the KDOC employees provided him with the wrong claim form. He also pointed to KDOC's Internal Management Policy and Procedure (IMPP) 01-118, which stated that "[s]taff assistance and all necessary forms shall be provided to inmates interested in filing a claim." In other words, Sperry acknowledged he never pursued an article 16 claim, but he argued this failure was excused because KDOC wrongfully provided him article 15 forms.

In ruling on this first motion to dismiss and its supplement, the district court granted some aspects of the KDOC defendants' various arguments about capacity; this resulted in dismissal of KDOC itself as a party. In addition, the district court dismissed Sperry's personal injury claim and request for damages against the Warden and Secretary in their *official* capacities because Sperry had failed to exhaust administrative remedies when he did not file a timely article 16 claim. The court noted that Sperry "does not deny that he did not submit a personal injury claim within 10 calendar days of the claim[ed] personal injury." Then, addressing Sperry's waiver argument, the district court simply concluded: "The [d]efendants didn't relinquish a known right by allegedly failing to provide forms to the Plaintiff." The court observed that the argument seemed to be more one of estoppel than waiver. Without asking the litigants for arguments or to present a statement of facts relating to the elements of estoppel, the district court determined

7

Sperry could not establish estoppel because he had not detrimentally relied on the KDOC defendants. This determination appears to have been based on arguments Sperry presented in an effort to establish that the article 16 procedure did not apply to his claim.

After the district court's ruling, Sperry's claims against the Warden and Secretary in their individual capacities—as opposed to official capacities—remained.

Sometime after the district court's ruling, Sperry filed an "Amended Complaint" without any attached documents. In many respects the "Amended Complaint" mirrored the original "Complaint." For example, Sperry again alleged that the KDOC defendants had "refused to process" his March 2010 grievance, lost his October 2010 grievance, and denied his November 2010 replacement grievance "all the way through[] to the Secretary of Corrections." But the amended pleading also differed from the original in several ways. Of note, Sperry did not specifically allege violations of state law; his jurisdictional statement was limited to "civil rights claims," and he listed only a single cause of action: "Eighth Amendment—Cruel and Unusual Punishment." Nevertheless, for reasons not made clear in the record before us, the parties and the district court continued to discuss the state law tort claims found in Sperry's original "Complaint." We can only assume the reasons are explained in a hearing not transcribed for appeal since the State does not assert error on this point. So we, too, will consider those claims.

Almost 2 years later, the district court dismissed all remaining claims when ruling on multiple motions to dismiss filed by the Warden and Secretary. In those motions the Warden and Secretary had argued, among other things, that all of Sperry's claims arose from actions subject to the prison's administrative grievance process. They renewed their argument that Sperry had never filed an article 16 personal injury claim and needed to do so. Finally, they argued Sperry failed to comply with K.S.A. 75-52,138 because he had

not and could not provide proof that he had timely exhausted administrative remedies prior to filing the lawsuit.

In response, Sperry asserted he had filed *some* type of claim within 10 days to put the facility on notice—his March 2010 grievance—and it was LCF's fault he was provided the wrong form. He supported his argument with a statement of facts, which consisted of a series of numbered paragraphs. These facts were not verified, supported by an affidavit, or supported by references to the discovery record.

Sperry also addressed, in his response to the State's motion to dismiss, the timing of his claims' accrual and of his grievance filing. In one statement of fact, Sperry indicated he learned of his exposure to contaminants on February 22, 2010; this statement conflicted with Sperry's previous sworn statement in his verified "Complaint" that he had learned of his exposure to contaminants in January 2010. In another statement of fact, Sperry stated prison officials placed him in segregation for an alleged disciplinary violation on February 23, 2010, and "separated [him] from his rule book." He also alleged: "Unit Team Manger Jewell was in charge of segregation at the time and refused to supply plaintiff with the appropriate forms. In fact, he made certain that he did not return the grievance form until the ten calendar days for filing the injury claim form had passed."

Regarding the form used to file the grievance, Sperry alleged he used the form provided by prison officials. He also argued his grievance "clearly contained matters that were valid under the grievance procedure (*i.e.*[,] remediation of asbestos and lead paint[] and medical treatment)." Sperry asserted the Warden "falsely" denied the grievance— and, for the first time, he attached some documentation about this alleged March 2010 grievance:  a March 26, 2010, letter from the Warden stating that his grievance was

9

received, an investigation was completed, and LCF declined to take action. According to Sperry, he appealed the Warden's denial to the Secretary but "the appeal was never returned to him." Finally, Sperry alleged he "tried to file an out of time Property/Injury Claim form, but Unit Team Manager Muckenthaler refused to process it as it was beyond the 10 calendar day time limitation set forth in K.A.R. 44-16-104a." Sperry thus reiterated and expanded upon his argument that LCF had wrongfully provided him with article 15 procedure forms and thus could not now claim his lawsuit must fail because of a failure to pursue an article 16 procedure.

The district court rejected Sperry's waiver arguments. In reaching this result, the district court reasoned that Sperry had not alleged ultra vires acts on the part of the defendants—"all of the acts allegedly attributed to the Defendants would have clearly been within their dut[ies]." Thus, Sperry had to exhaust administrative remedies before filing a lawsuit against the Warden and Secretary in their *individual* capacities, which meant that Sperry was required to timely file an article 16 personal injury claim but had failed to do so. The district court rejected Sperry's argument that the KDOC defendants had waived reliance on K.A.R. 44-16-104a and K.S.A. 75-52,138's exhaustion requirement. In doing so the district court incorporated its earlier ruling that the KDOC defendants had not knowingly waived a known right.

Sperry appealed both dismissal orders to the Court of Appeals. A panel of that court affirmed the district court's order in part, reversed it in part, and remanded for further proceedings. *Sperry v. McKune*, No. 112,455, 2015 WL 3632752 (Kan. App. 2015) (unpublished opinion). Specifically, the panel affirmed the dismissal of Sperry's state law claims and reversed the dismissal of his § 1983 claim. 2015 WL 3632752.

The Court of Appeals began its analysis by acknowledging that both Kansas and federal law require exhaustion of administrative remedies before an inmate can file suit in trial court. Nevertheless, because of different statutory schemes for state and federal claims, the issue under federal law was whether Sperry exhausted his remedies; the issues under Kansas law, under K.S.A. 75-52,138 specifically, were whether Sperry exhausted his remedies *and provided proof he did so*. 2015 WL 3632752, at *3-4. K.S.A. 75-52,138 thus imposed a filing requirement in addition to an actual exhaustion requirement.

After recognizing the exhaustion requirement, the Court of Appeals discussed the question of *which* administrative procedures Sperry was supposed to follow in order to exhaust his remedies, concluding the article 16 procedures applied because Sperry claimed personal injury. 2015 WL 3632752, at *4-5. The Court of Appeals noted it was uncontested Sperry did not comply with the article 16 personal injury procedures. And even though Sperry claimed he filed some sort of claim on March 1, 2010, he did not—at least at the time he filed his petition—provide any proof of this initial grievance or the KDOC defendants' responses. The court ruled Sperry both failed to follow the proper procedure for exhaustion of a personal injury claim *and* failed to file proof of exhaustion. 2015 WL 3632752, at *6; see K.S.A. 75-52,138.

The Court of Appeals then acknowledged an argument could be made that Sperry exhausted his administrative remedies under the article 15 grievance procedures, since his documentation showed he filed a grievance regarding conditions within the facility. Regardless, he still failed to *file proof* of timely exhaustion of administrative remedies, and this failure was determinative of his state law claims because of K.S.A. 75-52,138's filing requirements. Thus, the Court of Appeals concluded, whether Sperry was required to file a personal injury claim or instead was required to file a grievance, his state law claims failed for failure to attach proof. 2015 WL 3632752, at *6.

11

The Court of Appeals then turned to Sperry's federal § 1983 claim, which, unlike his state law claims, was *not* subject to Kansas law requiring an inmate to file proof of exhaustion when filing his lawsuit. The Court of Appeals ultimately concluded that exhaustion requirements for Sperry's § 1983 claim were mandatory, but not jurisdictional—meaning defendants like the Warden and the Secretary could waive their ability to use administrative exhaustion as an affirmative defense to an inmate's suit. 2015 WL 3632752, at *6-7. The Court of Appeals focused on Sperry's initial grievance in March 2010 instead of the November 2010 procedure considered by the district court, even though Sperry did not file any evidence of a March 2010 grievance until well after his petition was filed. The Court of Appeals found that the Warden addressed the merits of Sperry's March 2010 claim rather than rejecting it for a failure to comply with the article 16 claims procedure. This led the Court of Appeals to conclude: "KDOC waived its right to assert exhaustion of administrative remedies as an affirmative defense when it addressed the merits of Sperry's initial grievance . . . ." 2015 WL 3632752, at *8. Consequently, the Court of Appeals held the district court erred in dismissing Sperry's § 1983 claim. 2015 WL 3632752, at *8.

The Warden and the Secretary of Corrections then filed a petition seeking review of the panel's ruling regarding Sperry's § 1983 claim; they argued the waiver issue could not be considered because of procedural defects. Sperry cross-petitioned for review of the panel's decision regarding his state causes of action; he argued, in part, the waiver considerations the Court of Appeals had applied to his federal claim should also apply to his state claims. We initially denied the Warden and Secretary's petition, but we granted review of Sperry's cross-petition and the case was docketed. However, after reviewing the record and considering Sperry's cross-petition, we withdrew our denial of the Warden and Secretary's petition for review and granted review. Two circumstances prompted our

12

change in direction. First, on June 6, 2016, the United States Supreme Court issued *Ross v. Blake*, 578 U.S. ___, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016), which deals with the exhaustion of administrative remedies when an inmate brings a § 1983 claim. As we will discuss in detail, this decision raises potential questions about some of the Court of Appeals' and district court's reasoning. Second, our review of the full record suggested there were procedural obstacles that precluded a final determination of the waiver issue.

Our change of course, while unusual, is within our power and is warranted in this case. Under our rules, a party may not file a motion for reconsideration after a petition for review has been denied. Supreme Court Rule 8.03(g) (2015 Kan. Ct. R. Annot. 78). Nevertheless, this court has recognized its power to recall, correct, amplify, or modify its own mandate. *E.g.*, *West v. Insurance Co.*, 105 Kan. 414, 415-16, 185 P. 12 (1919). And here, a mandate had not even issued because of the pendency of Sperry's cross-petition for review. Further, this court has repeatedly observed the need for the discretionary power to reconsider a prior ruling, stating: "If an erroneous decision has been made, it ought to be corrected speedily, especially when it can be done before the litigation in which the error has been committed has terminated finally." *Railway Co. v. Merrill*, 65 Kan. 436, 451, 70 P. 358 (1902); see *Hudson v. Riley*, 114 Kan. 332, 335, 219 P. 499 (1923) ("If there was error in the ruling it is competent for the court to correct it, and especially where it can be done before the litigation in which it occurred has been finally terminated."); *Henry v. Railway Co.*, 83 Kan. 104, 108-09, 109 P. 1005 (1910) (errors should be corrected before final judgment).

Given these considerations we granted review, allowed both parties to file additional briefing, and placed the case on another docket for simultaneous consideration of all issues. Both the petition and cross-petition are now ready for decision.

ANALYSIS

The Warden and Secretary present a seemingly straightforward argument in their petition for review: The district court and Court of Appeals erred in considering material outside the pleadings when ruling on motions to dismiss. This would mean that the Court of Appeals should not have considered the Warden's response to Sperry's March 2010 grievance (which, as we have repeatedly underscored above, Sperry filed after his initial pleading). And, because that document served as the basis for the Court of Appeals ruling, the Court of Appeals should not have reversed the district court order dismissing Sperry's federal claim.

In Sperry's cross-petition he argues the district court and Court of Appeals erred in ruling his failure to attach proof that he exhausted his administrative remedies required dismissing his state law claims. He argues the exhaustion requirements of K.S.A. 75-52,138 are not jurisdictional and he should have had a chance to correct any filing errors. Then, as with his federal claim, he should be allowed to present evidence of waiver. He suggests the Court of Appeals inconsistently applied equitable doctrines to his federal and state claims and that equity should excuse both his failure to timely exhaust administrative remedies and his initial failure to prove he did so.

The arguments arising from the petition and cross-petition are intertwined, so we discuss them together. In our analysis, we will examine: (1) the motion to dismiss standard and the standard for when material outside the pleadings is considered (*i.e.*, the summary judgment standard); (2) K.S.A. 75-52,138 and the federal requirements regarding exhaustion of administrative remedies; (3) the specifics of what Sperry needed to do to exhaust those requirements—that is, the requirements of KDOC regulations

regarding article 15 and 16 claims; (4) equitable considerations; and (5) whether the district court and Court of Appeals applied the correct standards in this case.

1. *Motion to Dismiss Standard and Standard When Material Outside the Pleadings is Considered (i.e., the Summary Judgment Standard)*

As the Warden and Secretary point out, each of the motions considered by the district court and Court of Appeals was labeled as a motion to dismiss. But only the third motion cited a statute for authority. It referred to K.S.A. 2015 Supp. 60-212(b)(6), which allows dismissal for "failure to state a claim upon which relief can be granted." And as the Warden and Secretary also point out, a district court, when considering such a motion, must decide it "from the well-pleaded facts of plaintiff's petition." *Hemphill v. Shore*, 295 Kan. 1110, 1117, 289 P.3d 1173 (2012).

When considering the well-pleaded facts of the petition, K.S.A. 75-52,138 adds a wrinkle to the usual considerations because it requires an inmate to file proof of exhaustion with a petition initiating suit against any of the KDOC defendants; in an attempt to do so, Sperry attached some documents to his first filing. We know, through operation of K.S.A. 2015 Supp. 60-210(c), that documents attached to a petition can be considered when ruling on a 60-212(b)(6) motion. See K.S.A. 2015 Supp. 60-210(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). This means the district court, in reviewing the KDOC defendants' motion to dismiss, should have considered Sperry's petition as well as his attached exhibits regarding his claim with the Joint Committee on Special Claims Against the State and his November 2010 replacement grievance.

The KDOC defendants did not solely base their first motion seeking dismissal for failure to exhaust administrative remedies on the facts pleaded by Sperry, however.

15

Instead, they filed the affidavit of the Grievance/Property Claims Officer at LCF, who stated he reviewed all available LCF records and was unable to find any personal injury claim filed by Sperry. By filing this affidavit, the KDOC defendants introduced matters outside the pleadings. This changed the appropriate standard for the motion.

K.S.A. 2015 Supp. 60-212(b)(6) explains this shift. It provides:  "If, on a motion under subsection (b)(6) or (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under K.S.A. 60-256." K.S.A. 2015 Supp. 60-212(d). By definition, a "pleading" consists of a petition and an answer and not a filing such as the KDOC defendants' supplement to its motion to dismiss. K.S.A. 2015 Supp. 60-207(a). Thus, in this case, the Grievance/Property Claims Officer's affidavit should have served as the catalyst for converting the KDOC defendants' motion to dismiss into one for summary judgment.

When a motion to dismiss converts to a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." K.S.A. 2015 Supp. 60-212(d). K.S.A. 2015 Supp. 60-256 and Supreme Court Rule 141 (2015 Kan. Ct. Annot. 242) govern the form and manner of presenting these outside matters. Rule 141 requires statements of fact to be set out in separately numbered paragraphs, with documentation and record citations to support the factual statements. Supreme Court Rule 141(a). The opposing party may then controvert the facts, again with documentation and record citations. Supreme Court Rule 141(b). Under K.S.A. 2015 Supp. 60-256(c)(2), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

16

Neither the parties, the district court, nor the Court of Appeals cited the summary judgment standard. Yet, both the district court and the Court of Appeals considered the fact established by the affidavit presented by the KDOC defendants. Because a matter outside the pleading was not excluded, the summary judgment standard should have been applied and the questions addressed by the district court should have been whether there were any genuine issues of material fact and whether the KDOC defendants were entitled to judgment as a matter of law. And, as we will explain in more detail, the district court's and Court of Appeals' error in considering the facts in a manner contrary to K.S.A. 2015 Supp. 60-212, K.S.A. 2015 Supp. 60-256, and Supreme Court Rule 141 dictates the outcome of this appeal. To frame that procedural discussion, we need to discuss the law to determine what facts were material to the exhaustion issue.

2. *K.S.A. 75-52,138 and Federal Law Require Inmates to Exhaust Administrative Remedies.*

The Kansas Legislature defined an inmate's burden regarding exhaustion in K.S.A. 75-52,138. It states, in part:

> "Any inmate in the custody of the secretary of corrections . . . , prior to filing any civil action naming the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary of corrections, [or] the warden . . . as the defendant pursuant to the rules of civil procedure, shall have exhausted such inmate's administrative remedies, established by rules and regulations promulgated by the secretary of corrections . . . , concerning such civil action."

This portion of K.S.A. 75-52,138 corresponds to the federal Prison Litigation Reform Act (PLRA), which similarly requires all inmates to exhaust their administrative remedies prior to filing a civil suit in court. See 42 U.S.C. § 1997e(a) (2012) ("No action shall be brought with respect to prison conditions under [§] 1983 . . . , or any other

17

Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted.").

K.S.A. 75-52,138 contains an additional provision, absent from federal law, imposing a requirement of proof of exhaustion. Specifically, it states:  "Upon filing a petition in a civil action, such inmate shall *file with such petition proof that the administrative remedies have been exhausted*." (Emphasis added.) K.S.A. 75-52,138. In contrast, the United States Supreme Court has held that, while "failure to exhaust is an affirmative defense under the PLRA, . . . inmates are not required to specifically plead *or demonstrate* exhaustion in their complaints." (Emphasis added.) *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

When a state court considers an inmate claim under a federal law such as 42 U.S.C. § 1983, the Supremacy Clause of the United States Constitution preempts any state laws or rules that inhibit prosecution of such a claim in a manner different from what would be required in federal court. See *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 14-15, 20 P.3d 39 (2001) (citing United States Supreme Court decisions holding that a state cannot rely on a rule of procedure or an exhaustion rule that would "'frequently and predictably'" produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court). Hence, when an inmate states a claim under 42 U.S.C. § 1983, a Kansas state court can enforce Kansas' requirement that an inmate exhaust administrative remedies before filing suit because the same requirement is present in federal law, but it cannot impose a pleading requirement not found in federal law.

This means that, under both federal and state law, Sperry must have exhausted his administrative remedies—those remedies made available by the prison system in which

18

he is housed. But only his state claim is impacted by K.S.A. 75-52,138's pleading requirement. As a result, while Sperry had to file proof that he had exhausted administrative remedies when filing his petition in order to bring state law claims, he did not need to do so to bring his federal claim.

K.S.A. 75-52,138 also explains how exhaustion is to be determined; it requires an inmate to exhaust administrative remedies "established by rules and regulations promulgated by the secretary of corrections . . . concerning such civil action." In this case, both the district court and the Court of Appeals determined that the gravamen of Sperry's claim fell under article 16 of the KDOC's regulations, but the Court of Appeals recognized Sperry also had a potential article 15 claim. *Sperry*, 2015 WL 3632752, at *6. Which procedures govern Sperry's claim will impact how he needed to show exhaustion. To explain, we look to the details of the two articles in the KDOC's regulations.

3. *KDOC Regulations Regarding Article 15 and Article 16 Claims*

The article 15 grievance procedure applies to complaints by inmates "regarding policies and conditions within the jurisdiction of the facility or the department of corrections," "actions by employees and inmates, and incidents occurring within the facility," and some other circumstances. K.A.R. 44-15-101a(d)(1). An article 15 grievance must be filed within 15 days of discovery of the event giving rise to the grievance, but "[n]o grievance, regardless of time of discovery, shall be filed later than one year after the event." K.A.R. 44-15-101b.

The other procedure—the article 16 claim procedure—applies if an inmate claims a "loss of or damage to the inmate's own property" or if the inmate makes a claim for personal injury. K.A.R. 44-16-102(a) (property damage); K.A.R. 44-16-104a (personal

19

injury). A personal injury claim must be presented to prison officials "within 10 calendar days of the claimed personal injury." K.A.R. 44-16-104a(a).

Grievances about prison conditions may, in some circumstances, overlap with claims of personal injury. In such a case, the regulations explain that simply filing an article 15 grievance will not suffice. K.A.R. 44-15-101a(d)(2) provides that the article 15 grievance procedure "shall not be used in any way as a substitute for, or as part of, . . . the property loss or personal injury claims procedure" under article 16. And K.A.R. 44-16-104a(c) states that the article 16 requirement for filing a personal injury claim within 10 days "shall apply whether or not the inmate pursues a grievance pursuant to article 15 and whether or not the inmate files a claim with the legislative joint committee on special claims against the state."

Both the district court and the Court of Appeals concluded these regulations required Sperry to file an article 16 form in order to seek relief for personal injury. The Court of Appeals also distinguished between Sperry's article 15 and article 16 claims. It acknowledged that "[a]n argument could be made that Sperry did properly exhaust his administrative remedies by filing" an article 15 claim relating to conditions in the prison. *Sperry v. McKune*, No. 112,455, 2015 WL 3632752, at *6 (Kan. App. 2015) (unpublished opinion). Indeed, in Sperry's "Complaint," he complained about prison conditions and sought an injunction requiring the removal of contaminants from the prison. But the Court of Appeals cited the requirement that article 15 claims be filed within 15 days from the date of the discovery of the event giving rise to the grievance and concluded the claim must be dismissed because "he did not attach documentation of his initial grievance." 2015 WL 3632752, at *6. By implication, the Court of Appeals concluded the November 2010 grievance—the only grievance filed with the court when Sperry originally filed this lawsuit—was untimely.

20

Sperry's failure to prove he had filed a timely grievance defeated his state law claims, according to the Court of Appeals. But, because the proof-on-filing requirement did not apply to his federal claim, the Court of Appeals examined his federal cause of action separately. And with regard to that, it held the KDOC defendants waived the exhaustion requirement when the Warden did not deny Sperry's March 2010 claim on the grounds it was an article 15, not article 16, form. *Sperry*, 2015 WL 3632752, at *6-8.

In his cross-petition for review, Sperry argues the Court of Appeals conclusion regarding his failure to prove exhaustion is inconsistent with its conclusion that equitable principles—specifically waiver—excuses his failure to exhaust administrative remedies. He argues the equitable considerations should be considered as a basis for explaining why an inmate cannot file the necessary proof of exhaustion. Logically, it would seem that if an inmate could not exhaust administrative remedies because of circumstances giving rise to equitable considerations, the inmate would not be able to meet the proof requirement of K.S.A. 75-52,138. Yet, the Court of Appeals did not explain the difference in its treatment of K.S.A. 75-52,138's two requirements.

Sperry's argument depends on whether equitable considerations can be considered at all when K.S.A. 75-52,138 applies (and perhaps on other legal questions). We turn next to the legal basis for the district court's and Court of Appeals' consideration of equity.

4. *Equitable Considerations*

As we have discussed, both the district court and the Court of Appeals, citing *Chelf v. State*, 46 Kan. App. 2d 522, 263 P.3d 852 (2011), accepted the legal possibility

that principles of equity could excuse an inmate's failure to exhaust administrative remedies. The *Chelf* court held "the exhaustion requirement set forth in K.S.A. 75-52,138 is a mandatory, but nonjurisdictional, prerequisite to filing suit that must be strictly enforced by the court. Because it is not jurisdictional, failure to exhaust administrative remedies as required by this particular statute may be subject to certain equitable defenses." *Chelf*, 46 Kan. App. 2d at 533.

Before us, neither party takes issue with the holding in *Chelf*, even though this court has never expressly adopted *Chelf*. Perhaps this is because the *Chelf* court explained its analysis in detail, applying guidance from the United States Supreme Court regarding how to distinguish statutes that impose conditions upon a court's jurisdiction and those that merely impose procedural conditions that do not affect jurisdiction. This same reasoning has been adopted by other Court of Appeals panels, leading to the conclusion that the requirements of K.S.A. 75-52,138 are nonjurisdictional. *E.g.*, *Pittman v. Bliss*, No. 113,577, 2015 WL 9302708, at *4 (Kan. App. 2015) (unpublished opinion) (citing *Chelf*); *Sperry*, 2015 WL 3632752, at *7 (same); *Burdine v. State*, No. 108,152, 2013 WL 1943075, at *3 (Kan. App. 2013) (unpublished opinion) (same); *Redford v. State*, No. 106,787, 2013 WL 781102, at *6 (Kan. App. 2013) (unpublished opinion) (same).

Nevertheless, a recent decision of the United States Supreme Court interpreting the PLRA suggests courts should not create judicial exceptions to the exhaustion requirement of statutes such as K.S.A. 75-52,138. See *Ross v. Blake*, 578 U.S. ___, 136 S. Ct. 1850, 1856-57, 195 L. Ed. 2d 117 (2016) (holding the PLRA imposes a mandatory exhaustion requirement "[a]nd that mandatory language means a court may not excuse a failure to exhaust . . . . No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. . . . But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in

22

creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Even before *Ross*, federal courts expressed reluctance to apply exceptions to the PLRA's exhaustion requirement, which is comparable—although not identical—to K.S.A. 75-52,138. See *Hinton v. Corrections Corp. of America*, 623 F. Supp. 2d 61, 63 n.1 (D.D.C. 2009) (collecting cases and concluding "[t]he law is unsettled . . . on the question of the extent to which waiver, equitable estoppel or tolling can apply to defeat the affirmative defense of non-exhaustion under the PLRA"); *Hoover v. West*, 93 Fed. Appx. 177, 182 (10th Cir. 2004) (unpublished opinion) ("[T]he Seventh and Tenth Circuits have so far declined to decide whether equitable estoppel applies" to the PLRA exhaustion requirement.).

In light of the United States Supreme Court's recent decision in *Ross* and the *Chelf* court's reliance on United States Supreme Court decisions in its analysis, we decline to decide today whether we will adopt *Chelf*'s holdings. We defer this determination for two reasons. First, that issue has not been presented to us in either petition for review and the parties have not cited to nor discussed *Ross* or its implications on Sperry's federal claim or on the *Chelf* analysis. See Supreme Court Rule 8.03(a)(4)(C) (2015 Kan. Ct. R. Annot. 79) ("The court will not consider issues not presented or fairly included in the petition [for review]."). And, second, we need not resolve the questions because procedural issues require us to remand this case. On remand, the parties will be able to fully argue whether *Ross* impacts these proceedings if their arguments necessitate such a discussion.

Now that we have explained the legal background, we return to the manner in which the exhaustion issue was presented to and considered by the district court and the Court of Appeals.

5. *Application of the Appropriate Standard*

As our discussion of the law indicates, Sperry had to exhaust his remedies to seek judicial relief for either his federal or his state law causes of action and had to file proof of exhaustion to advance his state law claims. Facts critical to an exhaustion determination under *Chelf* include: (1) When did the incident giving rise to a grievance or claim occur? (2) Was a grievance or claim filed? (3) When was the grievance or claim filed? (4) Was the correct process or grievance filed and appealed to all administrative levels? and (5) Were there any equitable considerations? See 46 Kan. App. 2d at 534-35.

In Sperry's petition, he not only made allegations of fact, he arguably provided proof of any allegations he had made because he verified his petition—meaning he swore an oath that the contents of the petition were "true and correct." This court has long held that a "petition verified, positively, and not on information and belief, is, in effect, an affidavit." *Atchison v. Bartholow*, 4 Kan. 124, 128, 1866 WL 457 (1866). And we have allowed the use of a verified petition as evidence as long as it was not "verified on information and belief." *State, ex rel., v. Molitor*, 175 Kan. 317, 325, 263 P.2d 207 (1953).

The verified facts in the petition address: (1) when the claim arose (Sperry stated he learned of his exposure to contaminants in January 2010 and was denied medical treatment in March 2010); (2) whether a grievance was filed (Sperry filed several grievances); (3) when a grievance or claim was filed (Sperry filed an internal grievance

24

and a claim with the Joint Committee on Special Claims Against the State in March 2010); (4) what procedure was used and appealed through the various administrative steps (the March grievance was not exhausted but a November one, filed on an article 15 form, was exhausted); and (5) a potential equitable consideration arose (because the KDOC defendants "refused to process the grievance"). The KDOC defendants' did not particularly focus on these facts, either by arguing (1) the statements established the claim was untimely or (2) the statements were too vague or legally insufficient to meet the requirements of K.S.A. 75-52,138 or to raise an issue under *Chelf*.

Instead, the KDOC defendants' exhaustion arguments focused on the regulations requiring Sperry to bring an article 16 claim before filing suit. To establish that he had not done so, they filed the affidavit of the LCF Grievance/Property Claims Officer. The district court and Court of Appeals found that Sperry had not filed an article 16 claim, and both courts noted that Sperry had not disputed that fact. Although the affidavit was only attached to the supplement to the first motion to dismiss, the district court made the same finding in its second motion. Hence, under K.S.A. 2015 Supp. 60-212(d), the KDOC defendants' motions should have been treated as motions for summary judgment.

Ironically, it is the Warden and Secretary who argue the Court of Appeals erred when it considered facts outside the pleadings in determining the KDOC defendants waived the exhaustion requirement. Because they submitted the affidavit that converted the process from one under K.S.A. 2015 Supp. 60-212 to one under K.S.A. 2015 Supp. 60-256, we reject the KDOC defendants' contention that this case should be resolved as a motion to dismiss. A party cannot invite a court to consider material outside a pleading and then complain of error when the court does so. See *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 618, 375 P.3d 304 (2016).

We note further that the KDOC defendants' appellate brief before the Court of Appeals did not directly respond to Sperry's argument that equitable considerations excused his failure to exhaust administrative remedies. See *Sperry*, 2015 WL 3632752, at *7 ("Sperry argues that KDOC's violation of its own rules constitutes waiver of the exhaustion of administrative remedies requirement. Defendants do not address this argument on appeal."). As a result, the KDOC defendants abandoned this issue. *State v. Seacat*, 303 Kan. 622, 628, 366 P.3d 208 (2016) ("[T]he failure to brief and argue an issue constitutes abandonment of the issue.").

Nevertheless, the KDOC defendants may still be correct in arguing that the district court and Court of Appeals erred by considering matters they should not have in ruling on the KDOC defendants' motion. But rather than being based on an inappropriate application of the motion to dismiss standard, as they argue, the error arises from an improper application of the rules regarding summary judgment and the summary judgment standard. Both courts considered facts argued by the litigants even though the factual statements did not cite to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" and without a determination "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016); see K.S.A. 2015 Supp. 60-256; Supreme Court Rule 141. And while we will liberally construe the pleadings of pro se litigants like Sperry, pro se litigants must still follow procedural rules. *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004).

The failure of the litigants to comply with Rule 141 and of the district court or Court of Appeals to enforce its provisions creates a situation where the record before us lacks the clarity necessary for ruling on a motion for summary judgment. This court

considered the ramifications of such a situation in *Rhoten v. Dickson*, 290 Kan. 92, 223 P.3d 786 (2010).

In that case, this court held that a district court erred when it did not require litigants to comply with Rule 141 after materials outside the pleadings were argued in relation to a motion to dismiss. The court explained that not requiring compliance "risks confusion among the litigants and the court and runs a substantial prejudicial risk to the fair presentation of the facts and law." 290 Kan. at 103. But the court also noted the error could be harmless and cited cases supporting harmlessness when, for example, (1) the district court had excluded from its consideration any matters outside those in the petition; (2) the additional material did not otherwise infect the district court's consideration; or (3) the subsequent filings "allowed for the proper presentation of the minimal number of uncontroverted facts required to establish defendants' entitlement" to relief. 290 Kan. at 104-05. The *Rhoten* court contrasted these situations with one that arose in *McCullough v. Bethany Med. Center*, 235 Kan. 732, 683 P.2d 1258 (1984).

In *McCullough*, this court found reversible error when a district court failed to enforce Supreme Court Rule 141. Noting Rule 141 "is not just fluff," the court determined there was "no way to determine then or now what facts are or are not controverted or on what evidence the parties rely." 235 Kan. at 736.

This case presents a situation like that in *McCullough*. An examination of the conflicting rulings of the district court and the Court of Appeals on the issue of waiver illustrates why.

The district court made the factual finding that the KDOC defendants did not waive reliance on the exhaustion doctrine because they "didn't relinquish a known right

by allegedly failing to provide forms" to Sperry. Ordinarily, the issue of waiver presents a question of fact that can only be decided on summary judgment when the material facts are uncontroverted. See *Foundation Property Investments v. CTP*, 286 Kan. 597, 610, 186 P.3d 766 (2008). In this case, we are unable to tell what facts the district court relied on in finding that KDOC did not relinquish a known right and we are similarly unable to tell whether those facts were disputed.

Our inability to determine the facts on which the district court's ruling was based creates problems because the Court of Appeals reached the opposite conclusion, holding instead:

> "[T]he trial court's decision to dismiss Sperry's 42 U.S.C. § 1983 claim for failure to exhaust administrative remedies was improper because KDOC waived its right to assert exhaustion of administrative remedies as an affirmative defense when it addressed the merits of Sperry's initial grievance that was later deemed to be improper." *Sperry*, 2015 WL 3632752, at *8.

The Court of Appeals reached this conclusion by relying on a March 26, 2010, document in which the LCF Warden denied Sperry's claim—a document Sperry attached only with his response to the KDOC defendants' third motion to dismiss. It appears the Court of Appeals raised the effect of the March 2010 denial of Sperry's grievance on its own, without benefit of argument from the parties. Yet, this document was *not* attached to Sperry's "Complaint" or "Amended Complaint" and was not before the district court when it made its initial ruling on waiver. And because Sperry's allegations regarding this letter did not conform to Rule 141, it is not clear that the KDOC had an opportunity to controvert any facts regarding the effect of the letter. Moreover, because the grievance process was not final until the Warden's letter had been reviewed by the Secretary, a

question of law arises as to whether the Warden's letter was sufficient to waive the exhaustion doctrine on behalf of all—or any—of the KDOC defendants.

We could provide several other examples of essential facts we cannot determine, but this one area of controverted facts establishes the point. Given our inability to know whether the facts cited by the district court or the Court of Appeals are supported and, if supported, are uncontroverted and thus ripe for summary judgment, we conclude the district court and the Court of Appeals erred in failing to require compliance with Rule 141. Consequently, we remand for consideration of the various filings under the appropriate standards. Given this resolution, we need not discuss Sperry's other arguments.

We, therefore, reverse the Court of Appeals holding that the KDOC defendants waived their right to rely on Sperry's alleged failure to exhaust administrative remedies. Likewise, we reverse the district court's decision granting the KDOC defendants' motion to dismiss because it was based, at least in part, on facts not properly before the court.

CONCLUSION

Both the district court and Court of Appeals erred in not enforcing the requirements of Supreme Court Rule 141, and that error cannot be considered harmless because there is "no way to determine then or now what facts are or are not controverted or on what evidence the parties rely." *McCullough*, 235 Kan. at 736. We, therefore, reverse the district court's decision that Sperry's claims must be dismissed for failure to exhaust administrative remedies. We also reverse the Court of Appeals. We remand to the district court for reconsideration of the parties' arguments and, if appropriate, enforcement of Supreme Court Rule 141.

29

Judgment of the Court of Appeals affirming in part, reversing in part, and remanding is reversed on the issues subject to review. Judgment of the district court is reversed on the issues subject to review and remanded with directions.